First Division
Filed: 5-21-07

No. 1-05-3020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 C2 20254 |
| | ) | |
| PAUL VICTOR McGEE, | ) | Honorable |
| | ) | Marcia B. Orr |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Following a jury trial, defendant Paul McGee was found guilty of burglary and sentenced to a term of 15 years' imprisonment as a Class X offender. On appeal, defendant argues that (1) the trial court erred by denying his motion to quash arrest and suppress evidence due to a lack of probable cause; (2) the State failed to prove him guilty beyond a reasonable doubt, where purportedly the only evidence against him was his possession of the proceed from the burglary; and (3) trial counsel was ineffective by (a) failing to raise objections to Illinois Pattern Jury Instructions, Criminal No. 3.15(b)(4th ed. 2000)(hereinafter IPI Criminal (4th No. 3.15), (b) failing to object to the admission of the victim's identification testimony, and (c) failing to object to testimony identifying the defendant in a police show up procedure.

BACKGROUND

Prior to trial, defendant moved to quash his arrest and suppress evidence, specifically a Palm Pilot portable computer that was seized from his person during a custodial search following

his arrest. Defendant argued that the police officers lacked probable cause to make an arrest. At the hearing, Officers Lance Lopez and George Gonzalez, as well as the victim, Darren Taylor, testified. Officer Lopez testified that on April 24, 2003, at 10:15 p.m., he was on duty in Evanston Township and was notified over the police radio that there was a burglary of an automobile in progress in the 1200 block of Wesley Avenue. He was also informed that Taylor was in pursuit of the possible offender, described as a male subject wearing dark clothes and carrying a white bag. Officer Lopez testified that he headed to the scene of the burglary but was redirected by the dispatcher to a location three blocks north of the 1500 block of Wesley. Upon arriving at that location, Officer Lopez spotted a suspect who matched the description provided over the police radio. The suspect was wearing dark clothes consisting of a corduroy jacket and a "do-rag" (a simple piece of cloth tied at the back, used to cover the head) and carrying a white bag. Officer Lopez was also informed that Taylor, who had been following the suspect, was nearby. Officer Lopez was under the impression that Taylor was an occurrence witness and had been following the suspect from the scene of the burglary.

Officer Lopez approached defendant and shined a light on his face in order to allow Taylor the opportunity to clearly view and identify the suspect. Taylor made a positive identification of the suspect while sitting in his automobile from 75 feet away. Defendant was placed under arrest, and Officer Lopez performed a custodial search of defendant's person and found he was in possession of a Palm Pilot taken from Taylor's vehicle. Officer Lopez never brought defendant to Taylor or asked Taylor to get out of his automobile to identify him.

Taylor testified that on the night of April 24, 2003, at approximately 10:10 p.m. he was in bed with his wife at his home at 1245 Wesley Avenue in Evanston, when he heard a crash and his auto alarm go off. His wife went to the bedroom window, while he grabbed his cell phone and his wife's car keys and ran outside. While he was outside, his neighbor Margaret Froh "Peggy" Asseo ran toward him. His wife as well as Asseo yelled that they saw a man running north on Wesley wearing a dark parka, tight hat, and carrying a white bag. Taylor looked into the front seat of his Ford Explorer and saw that his briefcase was missing from the front passenger seat. The only thing of value in his briefcase was his Palm Pilot. Taylor took his wife's car and headed north on Wesley, crossing Dempster Street, and turned into the alley north of Dempster when he saw a man wearing a dark coat, tight hat and carrying a white bag. Taylor then called his wife to obtain a further description of the man she had seen. She told him that the man had a dark coat, tight hat, and white bag. He did not see anyone else in the area matching this description. Defendant was not carrying a brief case. Taylor then called 911 and provided a description of defendant and his location. An officer arrived, approached defendant, and shined a light on defendant's face. Taylor gave a "thumbs up" from his wife's auto approximately 75 feet from the suspect. Defendant was arrested. A custodial search revealed that a Palm Pilot was on defendant's person.

After the search an officer approached Taylor with the Palm Pilot, which Taylor positively identified as his Palm Pilot taken from his vehicle.

3

On cross-examination, Taylor testified that while pursuing the suspect, he lost sight of him and thought that he may have gone into a vehicle. Taylor told the dispatch that he was not sure that he was following the right person, but his wife had seen a man with a ski hat and the neighbor had seen someone carrying a white bag. This information was never transmitted to the police on the scene because at that point the defendant had already been stopped by the police. However, on redirect examination, Taylor confirmed that the suspect arrested was the same person he had been following.

Officer George Gonzalez's testimony corroborated Officer Lopez's testimony regarding the arrest of defendant and the identification by Taylor. The trial court was presented with the tape recordings of all 911 calls and radio communications between the police. The 911 tape and transcript were admitted into evidence by stipulation that the tape contained two separate channels running simultaneously, but dubbed sequentially. Consequently, the arresting officer may not have been privy to the 911 call from Taylor to dispatch. The trial court also noted that some sections of the transcript of the radio communications were missing and out of order. The 911 tape consisted of phone calls made by Taylor's wife, as well as Taylor. Immediately after the burglary occurred, Mrs. Taylor called 911 and, based in part on Ms. Asseo's description, described the suspect of the burglary as wearing a parka, being 5 feet 10 inches tall and slender, and carrying a white bag. Mrs. Taylor could not identify the race of the suspect. Taylor also called 911 while in pursuit of defendant and informed the dispatch on several occasions that he was unsure if he was following the person who had broken into his vehicle, but he had been

following the person his wife saw near his vehicle at the time of the break in.  Officer Lopez additionally testified that certain car-to-car communications between the police officers were not on the tape recordings.  Upon hearing the testimony and reviewing the transcripts of the 911 calls and radio communications, the judge denied defendant's motions to quash the arrest and suppress the evidence seized during the custodial search.

At the conclusion of the suppression hearing, the trial judge noted, "It's clear to me the police were never told that Darren [Taylor] wasn't an occurrence witness to this case."  The trial judge held the description provided to the police officers was sufficient to stop defendant.  Specifically, the trial court distinguished the present case from *People v. Lawson*, 298 Ill. App. 3d 997 (1998), a case which affirmed a quashing of an arrest and suppression of evidence where the officer issuing the police bulletin did not possess facts sufficient to establish probable cause.  However, in this case, the trial court held that the dispatch issuing the bulletin relied on the description provided by Mrs. Taylor as well as Darren Taylor, and the arresting officer also relied on the fact that Darren Taylor had followed defendant and was near the scene of the arrest.  Additionally, the trial court held that there was no other person in the area and the suspect was stopped three blocks from the burglary 5 to 10 minutes after the break-in.  The trial court concluded that the officers made a valid *Terry* stop.  *Terry v. Ohio*, 392 U.S. 1, 31, 20 L. Ed. 2d 889, 911, 88 S. Ct. 1868, 1885 (1968).

After the identification by Taylor's "thumbs up," the trial court held that "[a]t that point it is clear to me they had a full blown probable cause to arrest him."  The trial court relied on

5

No. 1-05-3020

*People v. Hubbard*, 341 Ill. App. 3d 911, 916 (2003), which held that time and proximity to the commission of the crime are major factors to consider in deciding whether one can make a stop. The trial court also held that the transcript of the radio communications was complete enough to draw a conclusion that there was probable cause to believe that a crime had been committed and that this defendant, who was stopped within close temporal and geographical proximity, fitting the same general description, committed that crime.

The case then proceeded to a jury trial. At trial, Mrs. Taylor testified that at 10:15 p.m. on April 24, 2003, she and her husband were in bed watching television when she heard a loud smashing sound and then the sound of her husband's auto alarm being activated. She looked out of the bedroom window and saw that the passenger side window of her husband's Ford Explorer had been broken. She saw a man walking away from the Explorer, and described him as a man wearing a dark jacket and a tight dark hat and carrying a white bag. He headed northbound. Mrs. Taylor did not see or hear any vehicles speeding away. She dialed 911 and her husband grabbed his cell phone, her car keys, and proceeded outside. From the bedroom window she yelled the description of the man she saw. On cross-examination, Mrs. Taylor testified that she did not see the man's left hand or if he was carrying a briefcase.

Peggy Asseo, a neighbor of the Taylors, testified that at the time of the incident she was in her home and heard a popping noise that sounded like a car window breaking and within seconds looked out her window. She testified that a man walked into her line of sight, stopped slightly north of the Explorer, pulled something down over his head, and shook a satchel in his

6

hand. She stated that the man was wearing a dark parka or coat and wore something on his head. She ran downstairs and gave her husband the description of the man and his direction of travel. She stated that the man was medium height, about 5 feet 10 inches tall, not overweight with broad shoulders.

At trial, Taylor's testimony was consistent with his testimony given at the motion to quash arrest and suppress evidence hearing. At trial, Taylor also explained in detail his pursuit of defendant from his home until he was apprehended. He explained to the court how he retracted his steps with the police officers after defendant's arrest and found his briefcase in a garbage can. Taylor made an in-court identification of the suspect, positively identifying defendant as the individual he had followed from his home and identified in the alley at the time of defendant's arrest. Taylor explained how he identified defendant during the showup procedure and that an officer came and asked him if the suspect was the person he had been following. Taylor again explained that while following the suspect from his home, he was unsure if the suspect he was following was the individual that had broken into his vehicle, but that he was sure that the person he was following was the person his wife had described.

Officer Lopez's testimony also reflected his testimony at the suppression hearing. On cross-examination, he acknowledged that he did not conduct a lineup and that he did not order a fingerprint work up from the Palm Pilot and that no prints could be lifted off the briefcase. He also agreed that he would not describe defendant's coat at the time of arrest as a "parka," as

previous testimony from Ms. Asseo reflected. Officer Lopez also testified that defendant was 6 feet 2 inches and weighed 200 pounds.

The defense called one witness, Ralph Metz, an investigator from the Cook County Public Defender's office. Metz testified that he contacted Asseo over the phone and that she described the suspect as 5 feet 9 inches, wearing a dark, hooded sweatshirt that was pulled tightly around his head. Metz stated that Asseo told him that she would not be able to identify the person she saw on the night of the burglary. Metz also stated that he interviewed Mrs. Taylor over the phone. The defense also offered into evidence the 911 tape, which was played for the jury. The defense then rested.

The jury received various instructions, including IPI Criminal 4th No. 3.15 regarding eyewitness testimony. After being instructed, the jury found defendant guilty of burglary. Following the trial, defense counsel as well as defendant *pro se*, filed motions for a new trial. Defendant argued that his counsel was ineffective. The court appointed a new attorney to represent him in that claim. At the hearing, defendant claimed to be dissatisfied with his new representation and requested the court to consider his *pro se* motion instead of his counsel's motion for a new trial. The trial court ruled that it would consider both defendant's and his counsel's motions. After a hearing in which defendant testified, the court denied the motion for a new trial. Defendant was ultimately sentenced to 15 years in prison pursuant to the Class X sentencing statute.

ANALYSIS

I.  Motion to Quash Arrest and Suppress Evidence

On appeal, defendant first argues that the trial court erred by denying his motion to quash his arrest and suppress evidence.  Defendant contends that the information available to the police officers did not support a finding of probable cause to warrant his arrest.  Generally, a trial court's ruling on a motion to suppress will not be disturbed unless it is manifestly erroneous; however, when neither facts nor the credibility of the witness is contested, the trial court's ruling will be reviewed *de novo*.  *People v. Bunch*, 207 Ill. 2d 7, 13 (2003).  Both the State and defendant submit that the question here is legal in nature and therefore a *de novo* review applies.

An arrest without a warrant is valid only if supported by probable cause.  *People v. Montgomery*, 112 Ill. 2d 517, 525 (1986).  The Illinois Supreme Court has stated:

> "Probable cause exists when the totality of the facts and
> circumstances known to the officers is such that a reasonably
> prudent person would believe that the suspect is committing or has
> committed a crime. [Citations.] Whether probable cause is present
> is governed by common-sense considerations [citations], and the
> calculation concerns '[t]he probability of criminal activity, rather
> than proof beyond a reasonable doubt.' " *Montgomery*, 112 Ill. 2d
> at 525, quoting *People v. Tisler*, 103 Ill. 2d 226, 236 (1984).

The United States Supreme Court has set the standard for the reviewing courts in determining probable cause.  In order to access whether an officer had probable cause to arrest an

9

individual, the reviewing court must examine "the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371, 157 L. Ed. 2d 769, 775, 124 S. Ct. 795, 800 (2003), quoting *Ornelas v. United States*, 517 U.S. 690, 696, 134 L. Ed. 2d 911, 919, 116 S. Ct. 1657, 1661-62 (1996).

In this case, the trial judge, upon hearing testimony from Officers Lopez and Gonzalez and Taylor, and after reviewing the radio communications and 911 transcript in light of the applicable law, appropriately concluded that the police officers had probable cause to arrest and search defendant. Officer Lopez testified that he received a call from dispatch identifying the suspect as a male wearing dark clothes and carrying a white bag. Officer Lopez was informed that the victim of the burglary was pursuing the suspect, and the police dispatch directed Officer Lopez to a location three blocks north of the scene of the burglary. Upon arriving at the location, Officer Lopez spotted the suspect, who matched the description provided to him. Officer Lopez did not see any other individuals in the area matching the description. He conducted a show up and the suspect was positively identified by Taylor, albeit from a distance of approximately 75 feet. Officer Lopez testified that he thought that Taylor witnessed the suspect break into his vehicle.

Given these historical facts, it would be reasonable for Officer Lopez to conclude that he had probable cause to arrest the suspect. In *People v. Follins*, 196 Ill. App. 3d 680, 684 (1990), this court found that probable cause existed when an arresting officer testified at a pretrial

hearing on a motion to quash arrest that he stopped defendant because he matched a radio broadcast of a general description (black male offender, 5 feet 9 inches tall, weighing 170 pounds, wearing a blue sweat suit). In *Follins*, the officer stopped the defendant within minutes after a robbery only a few blocks from the scene of the crime as defendant was walking away from the scene. *Follins*, 196 Ill. App. 3d at 692. Likewise in this case, defendant matched a general description as provided to the police officers by the victim and was the only person in the area that matched that description. Taylor was following the suspect, had made a call to 911, and directed the police officers to the exact location. The trial court appropriately took into consideration the time and proximity of the commission of the crime to the scene of the arrest. The arrest was made within 5 to 10 minutes after the commission of the crime, which occurred and only three blocks from the burglary. Based on the totality of the facts and circumstances known to the officers, it is more than reasonable to conclude that the officers had probable cause to arrest defendant.

Defendant contends that no probable cause existed at the time of his arrest because Taylor told the dispatcher that he was unsure if the person he was following was the person who had broken into his vehicle. Although Taylor may have expressed doubts to the dispatcher, probable cause is determined based on the reasonableness of the police officers actions in light of the facts and circumstances presented to them. The officers were directed to a location by the dispatcher and spotted a suspect matching the description provided to them. Once the suspect was stopped, and then identified by Taylor, the officers had probable cause to arrest and search defendant.

No. 1-05-3020

Accordingly, the trial court properly held that there was probable cause to make a valid arrest. *Follins*, 196 Ill. App. 3d at 684. Consequently, the Palm Pilot recovered from defendant's person was not the fruit of an unlawful arrest and therefore should not have been barred as evidence at trial.

## II. Sufficiency of the Evidence

Next, defendant challenges the sufficiency of the evidence of his burglary conviction. "When a defendant challenges the sufficiency of the evidence, this court must determine whether a rational trier of fact, after viewing the evidence in the light most favorable to the State, could have found the elements of the offense proven beyond a reasonable doubt." *People v. Natal*, 368 Ill. App. 3d 262, 268 (2006), citing *People v. Maggette*, 195 Ill. 2d 336, 353 (2001). A court will not set aside "a criminal conviction on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of defendant's guilt." *Maggette*, 195 Ill. 2d at 353.

To obtain a conviction for burglary here, the State must prove that defendant knowingly entered the motor vehicle with the intent to commit a felony or theft. 720 ILCS 5/19-1 (West 2004). Circumstantial evidence is sufficient to sustain a conviction of burglary, so long as the elements of the crime have been proven beyond a reasonable doubt. See *People v. Hall*, 194 Ill. 2d 305, 330 (2000); *People v. Gilliam*, 172 Ill. 2d 484, 515 (1996). However, as the Illinois Supreme Court addressed in *People v. Housby*, 84 Ill. 2d 415, 423 (1981), a defendant's possession of recently stolen property, standing alone, is not sufficient evidence to sustain a

12

burglary conviction. In this case, defendant asserts that the court's decision in *Housby* should govern. Unlike *Housby* though, in the present case, the State presented a sufficient amount of evidence beyond mere possession of a stolen good for a reasonable trier of fact to find defendant guilty of burglary.

At trial, Mrs. Taylor testified that she heard her husband's auto alarm go off, went to the bedroom window, and saw a male individual with a dark jacket and tight dark hat carrying a white bag walking north from her husband's Explorer. Ms. Asseo, a neighbor, also heard the alarm and looked out her window and saw a man wearing a dark parka or coat and something on his head. Darren Taylor ran outside, obtained the man's description and his direction of travel from his wife and their neighbor, and then used his wife's auto to drive north a few blocks when he spotted an individual who fit the description. He then called his wife, who confirmed the description. Taylor then called the police to describe the location of defendant. When the police arrived, Officer Lopez approached defendant and shined a light in defendant's face, and Taylor identified the person with a "thumbs up" from 75 feet away. The defendant was then arrested and searched. The custodial search revealed a palm pilot, which Taylor identified as his palm pilot which was located in his briefcase and taken from his vehicle. The location of arrest was approximately three blocks from the commission of the burglary and within a short period of time after the commission of the crime. Additionally, Taylor with the aid of the police officers retraced the few blocks from Taylor's home to the location where he spotted defendant, and discovered Taylor's briefcase that was discarded in a garbage can. Based on this evidence

presented to the jury, it was reasonable to conclude that defendant committed the crime of burglary. The State presented circumstantial evidence, beyond mere possession of the stolen property, for a reasonable trier of fact to find defendant guilty of burglary.

Even if this court were persuaded by defendant's contention that the decision of *Housby* should govern this case, the jury verdict was nonetheless proper. In *Housby*, the Illinois Supreme Court held "that a jury could presume guilt based on exclusive possession of recently stolen property *only if* three requirements were met: (1) there was a rational connection between defendant's recent possession of stolen property and his participation in the burglary; (2) defendant's guilt of the burglary 'more likely than not' flowed from his recent, unexplained and exclusive possession of the proceeds; and (3) there was corroborating evidence of defendant's guilt." *Natal*, 368 Ill. App. 3d at 269, citing *Housby*, 84 Ill. 2d at 424. In this case, there exists a rational connection between defendant's possession of the Palm Pilot and the closeness in time and proximity to the commission of the burglary. See, e.g., *People v. Carter*, 197 Ill. App. 3d 1043, 1046 (1990) (holding that the proximity of the location and the time of arrest to the commission of the crime supports a rational connection as to satisfy the first prong of the *Housby* test). It is also clearly more likely than not that defendant burglarized Taylor's vehicle rather than the unexplained, innocent possession of the Palm Pilot. Finally, the State presented corroborating evidence through Mrs. Taylor and Ms. Asseo, each of whom identified the suspect as wearing a dark coat and a tight-fitting hat and carrying a white bag. Even though defendant was not wearing a "parka" as Ms. Asseo testified, the description of a dark coat and tight-fitting

14

hat and the carrying of a white bag was sufficient corroborating evidence of defendant's guilt. Under the *Housby* analysis, the State has met its burden of proof.

Accordingly, the State presented sufficient evidence to prove defendant guilty beyond a reasonable doubt.

### III.  Ineffective Assistance of Counsel

Finally, defendant contends that he is entitled to a new trial because he received ineffective assistance of counsel.  "To prevail on a claim of ineffective assistance of counsel, a defendant must show that his attorney committed such serious errors as to fall beyond an objective standard of reasonableness, and that, without those objectively unreasonable errors, there was a reasonable probability that his trial would have resulted differently."  *People v. Ward*, 371 Ill. App. 3d 382, 434 (2007), citing *Strickland v. Washington*, 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68 (1984); *People v. Albanese*, 104 Ill. 2d 504, 526 (1984).  This is a two-prong test.

In *Strickland*, the United States Supreme Court delineated the two-prong test to use when evaluating whether a defendant was denied the effective assistance of counsel in violation of the sixth amendment.  Under *Strickland*, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced defendant.  *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68.  Our Illinois Supreme Court has stated that to demonstrate performance deficiency, a defendant must establish that counsel's performance was below an objective standard of reasonableness.  *People v. Edwards*,

195 Ill. 2d 142, 163 (2001). In evaluating sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698m 104 S. Ct. at 2068.

When determining the effectiveness of counsel we must look at his entire performance during trial from opening statement to closing argument. *People v. Gleason*, 240 Ill. App. 3d 249, 257 (1992).

As the United States Supreme Court in *Strickland* cautioned, in reviewing an attorney's actions, courts should give deference to the attorney's decisions. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. 2065. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. At 2065. A mistake in trial strategy or tactics, without more, does not amount to ineffective assistance of counsel. *Ward*, 371 Ill. App. 3d at 434. Counsel's trial strategy is "virtually unchallengeable." *People v. Palmer*, 162 Ill. 2d 465, 476 (1994).

Defendant contends that his counsel was ineffective in failing to raise objections to jury instruction IPI Criminal 4th No. 3.15 regarding eyewitness testimony, concerning the admission of identification testimony by Taylor at trial, and his testimony of the show up procedure conducted by the police officers at the time of the arrest.

First, defendant specifically asserts that IPI Criminal 4th No. 3.15 lowered the States' burden of proof in this case. At the outset, it should be noted that defendant's counsel failed to object to this instruction at trial and did not raise such issue in a post trial motion, thus waiving the right to appeal this issue. Defendant argues that we should consider his arguments now under the plain error rule. Supreme Court Rule 615(a) states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a). "Under the plain error rule, issues not properly preserved may be considered by a reviewing court under two limited circumstances: (1) where the evidence is closely balanced, so as to preclude argument that an innocent person was wrongfully convicted; or (2) where the alleged error is so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process." *People v. Hall*, 194 Ill. 2d 305, 335 (2000).

However, even if this court were to examine this instruction under the plain error rule, IPI Criminal 4th No. 3.15 was an appropriate instruction and did not lower the State's burden of proof in this case. IPI Criminal 4th No. 3.15 provided to the jury the following:

> "When you weigh the identification testimony of a witness,
> you should consider all the facts and circumstances in evidence,
> including, but not limited to, the following. The opportunity the
> witness had to view the offender at the time of the offense; the

witness' earlier description of the offender; the level of certainty shown by the witness when confronting defendant; the length of time between the offense and the identification confrontation."

During the trial, the jury heard testimony from Mrs. Taylor and Ms. Asseo regarding a description of the suspect near Taylor's vehicle, which had been burglarized. The suspect was wearing a dark coat and a tight hat and carrying a white bag. Taylor relied on this description in following the suspect and identifying him to the police. At no point during the trial did Taylor state that he saw defendant break into his vehicle; rather, the testimony reflected that Taylor identified defendant as the individual who fit the description that his wife and Ms. Asseo provided to him. The jury heard testimony regarding the manner of dress and physique of defendant at the time of arrest. The instruction itself does not make any improper inferences to the jury that would lower the requisite burden of proof required by the State. In fact, the instruction provides the jury with the tools in which to consider minimal evidence of identification and could help a defendant who claims he was not the perpetrator of the crime. It was appropriate for the jury to consider this instruction in reaching its determination. Moreover, defense counsel in closing arguments utilized the factors as articulated in IPI Criminal 4th No. 3.15 to argue the innocence of his client. Defense counsel's choice not to object was sound trial strategy, which is to be afforded a strong presumption of constituting reasonable professional assistance.

Next, defendant argues that the admission of the identification testimony by Taylor was prejudicial. Again, defendant's counsel failed to object at trial or raise the issue in post trial motions, but even if evaluated under the plain error rule, defense's argument is unpersuasive. The State's testimony provided by Taylor did not seek to deceive the jury into believing that Taylor saw defendant burglarize his vehicle; rather, Taylor's testimony established that defendant was the individual who he followed from his home. The State examined Taylor as follows:

"MS. KANTER [Assistant State's Attorney]: What did you do when you got to the "T" in the alley that you described?"

MR. TAYLOR: I looked and turned left. And when I turned left, I saw defendant.

MS. KANTER: And defendant that you are pointing to, can you describe a piece - when you talked about defendant, who are you talking about?

MR. TAYLOR: The gentleman in a tie and a short-sleeve shirt.

MS. KANTER: I ask for an in-court identification of defendant?

THE COURT: Yes.

The testimony reflects that Taylor identified defendant as the person he saw in the alley where the arrest was made. Taylor's testimony did not identify defendant as the person he saw break

into his vehicle. Taylor testified that he did not see who broke into his vehicle. A failure to object to the testimony of Taylor's identification of defendant in the alley was not prejudicial as this evidence of defendant's presence in the alley was not contested at trial.

Finally, defendant also claims that the show up procedure carried out by the police prejudiced defendant. Although at the time of the show up, the police officers were not aware that Taylor was not an occurrence witness. During trial, Taylor's testimony made it apparent that he was identifying defendant in the show up as the person he was following, not the person who he had seen burglarize his vehicle. Again, evidence was never presented to the jury that Taylor had seen defendant break into his vehicle. Testimony regarding the show up procedure conducted by the police was therefore not prejudicial to defendant.

In this case, defense counsel's failure to object to IPI Criminal 4th No. 3.15 and testimony regarding Taylor's identification and the show up cannot support an ineffective assistance of counsel claim since these matters are sound trial strategy and did not prejudice defendant. Thus, defendant's claims here fail both prongs of the *Strickland* test.

CONCLUSION

For all the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

CAHILL and GARCIA, JJ., concur.