# Illinois Official Reports

## Appellate Court

---

### *People v. Brown*, 2017 IL App (1st) 150203

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NORMAN BROWN, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-15-0203 |
| Filed | September 19, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-3493; the Hon. Mary Margaret Brosnahan, Judge, presiding. |
| Judgment | Affirmed as modified. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Ann B. McLennan, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Christine Cook, and Margaret G. Lustig, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Neville and Justice Mason concurred in the judgment and opinion. |

## OPINION

¶ 1      Norman Brown appeals from the first-stage dismissal of his postconviction petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)). Brown contends that the trial court erred in dismissing his petition because he presented an arguable claim that his trial counsel was ineffective for failing to investigate and present to the jury the knife used by the victim during the altercation in which Brown shot the victim.

¶ 2      We affirm. Brown could have raised counsel's failure to investigate or obtain the knife on direct appeal. Accordingly, this claim is forfeited and was properly dismissed as frivolous and patently without merit. And, even if not forfeited, Brown's allegation that trial counsel was ineffective for failing to investigate the knife is meritless. We also correct the mathematical miscalculation in the fines, fees, and costs order. But, Brown cannot resurrect in this appeal issues on the merits of assessments (which would have been properly raised, if preserved, in his direct appeal) as if he were applying the ministerial correction of a mathematical calculation called for under section 110-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-14 (West 2010)). Brown has not persuaded us to ignore the lack of appellate jurisdiction. See *People v. Griffin*, 2017 IL App (1st) 143800, ¶ 21 (rejecting effort to "revest" appellate court with jurisdiction when jurisdiction never revested in trial court).

¶ 3                                      BACKGROUND

¶ 4      In September 2010, Brown went to a jury trial on one count of aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 2010)) for shooting Robert Jacks. The facts presented at trial follow.

¶ 5      In 2010, Brown and Mary Chatman were married but divorcing. Brown lived in Indiana; Chatman in Chicago. They shared custody of their daughter. On January 10, 2010, Brown was scheduled to return their daughter to Chatman after a weekend visitation. Chatman told Jacks, her friend and second-floor neighbor, that she was worried about how the exchange would go with Brown.

¶ 6      That evening, Brown brought their daughter up to Chatman's apartment instead of meeting Chatman downstairs as arranged. Chatman asked Brown to leave and texted Jacks, alerting him to Brown's arrival. Brown used her bathroom, made sexual advances toward her, and attempted to discuss reconciliation.

¶ 7      Jacks and his daughter, Tracy, left their apartment to meet the child in the front of the building, but no one was there. Jacks called the police and went upstairs with Tracy to check on Chatman. Their arrival agitated Brown. He pushed them out into the hallway and locked the door. Tracy used a spare key to reenter, further agitating Brown. He yelled, pushed Tracy down, and grabbed Jacks's arm. Jacks grabbed Brown's arm. Tracy was a few feet inside the apartment; Jacks was in the hallway.

¶ 8      Chatman left the apartment with their daughter. Jacks blocked Brown from following them. Brown backed Jacks and Tracy into the hall. Tracy was between Brown and Jacks. Jacks testified that Brown drew his gun and aimed it at him and Tracy. In response, Jacks pulled out a knife, which he testified was small, sharp-pointed, and primarily used for cutting small items like butter. He kept the knife with him for protection in the neighborhood. Jacks testified that he did not swing the knife at Brown or threaten him with it.

¶ 9        Brown fired at the ground in front of Jacks's feet several times, hitting Jacks's leg with his last shot. Jacks was taken to the hospital, where it was determined that the bullet went through his leg. Tracy testified that she was in front of her father and never saw a knife.

¶ 10       Chicago police officer Edwin Jones, an evidence technician, recovered one fired .32-caliber bullet and .32-caliber bullet casing and observed blood on the hallway floor outside of Chatman's apartment. He recovered nothing else in either the hallway or apartment.

¶ 11       Brown testified that he drew his gun after Jacks pulled out a kitchen knife with an eight-inch blade, reached around Tracy, and tried to cut Brown with it, nicking his arm. He repeatedly told Jacks to drop the knife, telling him "[d]rop the damn knife[,] I'm not playing with you." He "wasn't trying to shoot [Jacks]. [He] just figured he was a damn fool in the first place." Asked whether he shot Jacks on purpose or to scare him, Brown responded that he "just wanted him to drop the knife" and "wasn't planning on shooting at all." He "just wanted to let [Jacks] know he wasn't playing with him" where Jacks had "came out like a coward and reached around and came straight at" him. After the shooting, Brown immediately left and drove back to Indiana. He admitted he discarded the gun along the way.

¶ 12       In closing, defense counsel argued that Jacks was irrational and "unbalanced" and Brown was justified in discharging his gun because Jacks was coming at him with a knife and Brown had no alternative. The jury found Brown guilty of aggravated battery with a firearm.

¶ 13       In February 2011, the trial court conducted an inquiry under *People v. Krankel*, 102 Ill. 2d 181 (1984), on Brown's posttrial motion claiming ineffective assistance of counsel. Brown asserted that counsel was ineffective for, *inter alia*, failing to investigate the necessary evidence and failing to present evidence and arguments in support of his self-defense claim. Ultimately, the trial court found that trial counsel was not ineffective.

¶ 14       Brown's trial counsel filed a motion, and then an amended motion, for a new trial. The trial court denied Brown's motion to reconsider its *Krankel* ruling. Brown's trial counsel withdrew, and the court appointed a public defender. In April 2011, the court denied the public defender's request to reopen the *Krankel* hearing on Brown's ineffective assistance of counsel claims. The public defender filed a third amended motion for a new trial, which the trial court denied. Brown was sentenced to eight years' imprisonment.

¶ 15       Brown filed an appeal. Brown's appellate counsel filed a motion to withdraw under *Anders v. California*, 386 U.S. 738 (1967), arguing that there were no meritorious issues to be raised on appeal.[1] Brown filed a response, arguing that he was not proven guilty beyond a reasonable doubt and that his trial counsel provided ineffective assistance of counsel. We granted the motion to withdraw and affirmed the judgment of the trial court, agreeing with appellate counsel that an appeal would be without arguable merit. *People v. Brown*, No. 1-12-2919 (Nov. 6, 2013) (unpublished summary order under Supreme Court Rule 23(c)(2)).

¶ 16       Brown filed a *pro se* petition and supplemental petition for postconviction relief, raising multiple claims. His sole claim on appeal is that his trial counsel was ineffective for failing to investigate or obtain the knife used by Jacks and present it to the jury. The trial court

---

[1]Counsel filed a motion to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Due to the procedural posture of the case, we recharacterized the filing as a motion to withdraw under *Anders v. California*, 386 U.S. 738 (1967). See *People v. Brown*, No. 1-12-2919 (Nov. 6, 2013) (unpublished summary order under Supreme Court Rule 23(c)(2)).

- 3 -

summarily dismissed Brown's postconviction petition, finding it frivolous and patently without merit. It concluded, *inter alia*, that, "while the size of the knife was in dispute," the trial court denied Brown's ineffective assistance of counsel claim for failure to investigate the knife as there was no prejudice "in light of [defendant's] own trial testimony that he shot the victim *not* because he believed that such conduct was necessary to defend himself, *but instead because he wanted to scare the victim*." (Emphasis in original.)

¶ 17                                   ANALYSIS

¶ 18    Brown argues that the trial court improperly dismissed his postconviction petition, as it stated the gist of a constitutional claim of ineffective assistance of trial counsel for counsel's failure to investigate and obtain Jacks's knife. Brown also asks that we vacate one assessment and correct his fines and fees order to impose presentence custody credit against eligible fines.

¶ 19                    Claim of Ineffective Assistance of Counsel

¶ 20    Brown first asserts he made an arguable constitutional claim of ineffective assistance of counsel in his postconviction petition based on trial counsel's failure to investigate or attempt to obtain the knife used by Jacks and present it to the jury. He asserts that the knife would have supported his theory of self-defense at trial and would have served to impeach Jacks's testimony regarding its size. The State responds that the court properly dismissed Brown's petition as he failed to make an arguable claim of ineffective assistance. Either it is barred by *res judicata* and forfeited, or fails on the merits.

¶ 21    "The Post-Conviction Hearing Act provides a procedural mechanism through which a criminal defendant can assert that his federal or state constitutional rights were substantially violated in his original trial or sentencing hearing." *People v. Davis*, 2014 IL 115595, ¶ 13. A proceeding initiated under the Act is "not a substitute for a direct appeal, but rather is a collateral attack on a prior conviction and sentence." *Id.* The Act allows inquiry into constitutional issues arising in the original proceeding that have not been raised and could not have been adjudicated on direct appeal. *Id.* Issues raised and decided on direct appeal are barred by the doctrine of *res judicata*, and issues that could have been raised on direct appeal are forfeited. *Id.*

¶ 22    Proceedings are divided into three stages. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). This appeal relates only to the first stage. "At the first stage, the circuit court must, within 90 days of the petition's filing, independently review the petition, taking the allegations as true, and determine whether 'the petition is frivolous or is patently without merit.' " *People v. Hodges*, 234 Ill. 2d 1, 10 (2009) (quoting *People v. Edwards*, 197 Ill. 2d 239, 244 (2001)); 725 ILCS 5/122-2.1(a)(2) (West 2010). A petition is frivolous or patently without merit where it has no arguable basis in law or in fact. *Hodges*, 234 Ill. 2d at 11-12. A legal theory is "indisputably meritless" if it is "completely contradicted by the record," and a factual allegation is "fanciful" if it is "fantastic or delusional." *Id.* at 16-17. A postconviction petition may be summarily dismissed as frivolous and patently without merit based on both *res judicata* and forfeiture. *People v. Blair*, 215 Ill. 2d 427, 442 (2005).

¶ 23    To survive the first stage, a petition need present only the gist of a constitutional claim. *People v. Allen*, 2015 IL 113135, ¶ 24. "The 'gist' standard is 'a low threshold.' " *Edwards*, 197 Ill. 2d at 244 (quoting *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996)). "To set forth the

- 4 -

'gist' of a constitutional claim, the post-conviction petition 'need only present a limited amount of detail' [citation] and hence need not set forth the claim in its entirety." *Id.* (quoting *Gaultney*, 174 Ill. 2d at 418). We review the summary dismissal of a petition *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 24    Brown's petition alleged that his trial counsel was ineffective for failing to investigate or obtain Jacks's knife or both. Claims of ineffective assistance of counsel are reviewed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, "[t]o prevail on a claim of ineffective assistance *** a defendant must show both that counsel's performance 'fell below an objective standard of reasonableness' and that the deficient performance prejudiced the defense." *Hodges*, 234 Ill. 2d at 17 (quoting *Strickland*, 466 U.S. at 687-88). In the context of a postconviction petition, a claim alleging ineffective assistance of counsel may not be dismissed at the first stage if (i) counsel's performance arguably fell below an objective standard of reasonableness and (ii) the petitioner was arguably prejudiced as a result. *Id.*

¶ 25    "In demonstrating, under the first *Strickland* prong, that his [or her] counsel's performance was deficient, a defendant must overcome a strong presumption that, under the circumstances, counsel's conduct might be considered sound trial strategy." *People v. Houston*, 226 Ill. 2d 135, 144 (2007). Decisions that trial counsel makes regarding trial strategy are " 'virtually unchallengeable.' " *People v. McGee*, 373 Ill. App. 3d 824, 835 (2007) (quoting *People v. Palmer*, 162 Ill. 2d 465, 476 (1994)). Even mistakes in trial strategy will not, standing alone, establish ineffectiveness. *Palmer*, 162 Ill. 2d at 476. There is a strong presumption counsel's conduct falls within the range of reasonable actions. *McGee*, 373 Ill. App. 3d at 835.

¶ 26    We find Brown's claim of counsel's ineffectiveness to be forfeited as this argument could have been raised in Brown's direct appeal. On direct appeal, appellate counsel moved to withdraw under *Anders*, finding no meritorious issues to be raised. Brown filed a response, arguing the motion to withdraw should be denied as he was not proven guilty beyond a reasonable doubt and his trial counsel was ineffective. Brown set forth a litany of claims against his counsel, accusing counsel of, for example, making prejudicial and racist statements to the jury, lying to him, and failing to elicit testimony from Brown that the firearm accidently discharged. Defendant's response to appellate counsel's motion to withdraw is not in the record on appeal. But, the response is in the files maintained by this court, and we will consider it. See *People v. Jackson*, 182 Ill. 2d 30, 66 (1998) ("a court will take judicial notice of its own records"). Brown also alleged, in a single sentence, that trial counsel ignored "the evidence given to him," but did not specify what that evidence was. After considering Brown's response, we granted counsel leave to withdraw and affirmed the conviction and sentence, finding Brown's arguments without merit.

¶ 27    At no point in his response to the *Anders* motion did Brown argue that counsel was ineffective for failing to investigate or obtain Jacks's knife, let alone that the knife would have supported his purported self-defense claim. Brown could have raised counsel's failure to obtain the knife in his response, as the absence of the knife was in the record on direct appeal. In fact, the record reflects that defense counsel called the absence of the knife to the jury's attention, arguing in closing: "By the way, [it's] not where's the gun. Where's the knife? *** Just simply where was the knife that you used, Robert? Do you still have it? That never came up." As the trial court noted in its order, "all of the claims of ineffectiveness

raised in the instant petition either appeared on the face of the original appellate record or were known to the petitioner at the time of his direct appeal." Because counsel's alleged ineffectiveness for failing to investigate or present the knife was ascertainable from the record and could have been raised and determined on direct appeal, the issue is forfeited. *People v. Johnson*, 352 Ill. App. 3d 442, 448 (2004).

¶ 28 We note that *res judicata* and forfeiture principles apply even in the context of an appellate counsel's *Anders* motion to withdraw on direct appeal where, as here, the defendant filed a response to the motion. See *People v. Addison*, 371 Ill. App. 3d 941, 947 (2007) (allegations in postconviction petition were barred by *res judicata* and forfeiture because defendant had either raised issues in response to *Anders* motion on direct appeal or could have raised them in response). So, as Brown could have raised counsel's failure to investigate or obtain the knife on direct appeal, his claim is forfeited and was properly dismissed as frivolous and patently without merit. *Blair*, 215 Ill. 2d at 436 (where forfeiture precludes defendant from obtaining relief, claim is "necessarily 'frivolous' and 'patently without merit' ").

¶ 29 Even if it is not forfeited, Brown's ineffectiveness allegation is meritless. A strong presumption exists that trial counsel acted effectively in investigating a case. *People v. Domagala*, 2013 IL 113688, ¶ 38 (citing *People v. Kokoraleis*, 159 Ill. 2d 325, 330 (1994)). Counsel is not ineffective for eschewing further investigation where circumstances known to counsel at the time of the investigation do not demonstrate a need for further investigation. *People v. Henry*, 2016 IL App (1st) 150640, ¶ 65 (citing *People v. Pecoraro*, 175 Ill. 2d 294, 324 (1997)). Here, nothing in the record demonstrates that the knife was recovered or in possession of the State. This is corroborated by Brown's postconviction petitions. Brown made the unsupported argument that the State committed a discovery violation by failing to disclose "a 'butchers' knife, possessed and wielded by the victim." Accordingly, counsel could not have presented the knife to the jury.

¶ 30 To the extent that Brown appears to argue that trial counsel somehow should have obtained the knife from Jacks, there is no basis to conclude that counsel's investigation of the knife would have produced evidence useful to the defense. It is pure speculation that counsel's efforts would have produced an eight-inch butcher knife, especially in light of Jacks's testimony that the knife was small and primarily used for cutting butter.

¶ 31 Instead, trial counsel strategically used the absence of the knife to benefit Brown. Counsel's closing argument shows that the State's failure to produce the knife formed a crucial component of counsel's trial strategy to discredit Jacks's and Tracy's testimony, the only witnesses against Brown. Counsel's decision to focus on the weaknesses in the State's case, including its failure to produce the knife, was a matter of reasonable trial strategy that cannot support a claim of ineffective assistance of counsel. *People v. Munson*, 206 Ill. 2d 104, 139-40 (2002) (matters of trial strategy are generally immune from claims of ineffective assistance of counsel). Accordingly, Brown's petition failed to make an arguable constitutional claim that counsel's performance fell below an objective standard of reasonableness by failing to investigate or obtain Jacks's knife. It had no arguable basis in law or fact and was properly dismissed as frivolous and patently without merit. See *Hodges*, 234 Ill. 2d at 11-12.

¶ 32 We also agree with the trial court that Brown fails to make an arguable claim that the knife's absence was prejudicial. As the trial court stated, the outcome would have been the

same regardless of the size of the knife, given Brown's "own trial testimony that he shot the victim *** *because he wanted to scare the victim*." (Emphasis in original.)

¶ 33                                    Fines and Fees

¶ 34    Brown next argues that the trial court failed to give him $5 per day of credit for the 561 days he spent in presentence custody and that the presentence custody credit should be applied to his $10 mental health court assessment, $5 youth diversion/peer court assessment, $5 drug court assessment, $30 children's advocacy center assessment, $15 state police assessment, and $50 court system assessment. Brown further argues that this court should vacate the $5 electronic citation fee. The State agrees that Brown is owed presentence credit for his time in custody before sentencing, which should be applied to all of the above except for the $50 court systems assessment. The State further agrees that the electronic citation fee should be vacated. We review *de novo* the imposition of fines and fees. *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 60.

¶ 35    Brown did not raise these claims at trial, on direct appeal, or in his postconviction petition, and those claims are arguably forfeited. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). To determine whether or not we should address them, we must take a closer look at their foundation. Brown's arguments may be broken down into two categories. First, Brown contends that the trial court made what can be characterized as mathematical errors in calculating how much he owes. In this regard, Brown argues that the fines, fees, and costs order included in his common law record does not reflect his $5 per day credit for the 561 days he spent in custody before trial, which should be applied to offset certain fines charged him. Second, Brown contends that certain fees he was assessed should be considered fines to be offset by his monetary presentence incarceration credit and that the electronic citation fee was improperly assessed. We address Brown's claims of mathematical error first.

¶ 36    Although Brown's request for presentence credit is raised for the first time on appeal, section 110-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-14 (West 2010)) permits this court to award a defendant presentence custody credit on "application of the defendant." 725 ILCS 5/110-14 (West 2010). Claims for presentence custody credit under section 110-14 may be raised "at any time and at any stage of court proceedings, even on appeal in a postconviction petition." *People v. Caballero*, 228 Ill. 2d 79, 88 (2008) (holding Caballero was entitled to $5 per day for the 118 days he spent in custody before sentencing). Granting credit is a simple ministerial act that promotes judicial economy by ending any further proceedings over the matter. *People v. Woodard*, 175 Ill. 2d 435, 456-57 (1993).

¶ 37    As recently explained in *People v. Griffin*, 2017 IL App (1st) 143800, where, as here, a case involves an appeal from a properly filed postconviction petition and it is undisputed that the appeal is properly before the court, "*Caballero*, in essence, stands for the proposition that a defendant may 'piggyback' a section 110-14 claim onto any properly filed appeal, even if the claim is unrelated to the grounds for that appeal." *Griffin*, 2017 IL App (1st) 143800, ¶ 25; see also *People v. Grigorov*, 2017 IL App (1st) 143274, ¶ 7. So, we will address Brown's claim for presentence custody credit.

¶ 38    A defendant is entitled to a $5 credit toward the fines levied against him or her for each day of incarceration before sentencing. 725 ILCS 5/110-14(a) (West 2010). Brown accumulated 561 days of presentence custody credit and is entitled to as much as $2805 of credit toward his eligible fines.

¶ 39    Brown is entitled to use this presentence custody credit to offset the following fines: the $10 mental health court assessment (55 ILCS 5/5-1101(d-5) (West 2010)), the $5 youth diversion/peer court assessment (55 ILCS 5/5-1101(e) (West 2010)), the $5 drug court assessment (55 ILCS 5/5-1101(f) (West 2010)), and the $30 children's advocacy center assessment (55 ILCS 5/5-1101(f-5) (West 2010)). Brown's fines and fees order states that these fines should be offset by his presentence incarceration credit. Despite this language, Brown was charged $770 for fines, fees, and costs, which is the total of all charges imposed on him and does not reflect the $50 credit to which he was entitled. His order should indicate that the total amount owed by him is $720, not $770 as it currently states.

¶ 40    But while *Caballero* and section 110-14 permit Brown to raise his claim for the *per diem* credit in these proceedings, they do not allow him to raise *substantive* issues concerning whether particular assessments apply to his case or whether they are properly categorized as fines or fees. In other words, Brown cannot resurrect issues on the merits of those assessments (which would have been properly raised, if preserved, in his direct appeal) under the guise of applying for the ministerial correction of a mathematical calculation called for under section 110-14. We have previously held that fees assessed in error are not void, nor are they independently reviewable under Illinois Supreme Court Rule 615(b). *Grigorov*, 2017 IL App (1st) 143274, ¶¶ 12-14. Thus, we do not have independent subject matter jurisdiction over these claims.

¶ 41    Accordingly, we will not address Brown's claims that the $15 state police fee (705 ILCS 105/27.3a(1.5) (West 2010)) and $50 court system fee (55 ILCS 5/5-1101(c) (West 2010)) are really, despite their labels, fines as to which he should be allowed credit. By the same token, we will not address Brown's claim that the $5 electronic citation fee (705 ILCS 105/27.3e (West 2010)) should not have been assessed.

¶ 42    The fact that the State (i) concedes that the electronic citation fee is not applicable here and that the state police operations charge is actually a fine (*People v. Nunez*, 236 Ill. 2d 488, 493 (2010) (reviewing court not bound by party's concession)) and (ii) addresses the merits of Brown's argument on the court system fee, does not persuade us that we should overlook the lack of our appellate jurisdiction. See *Griffin*, 2017 IL App (1st) 143800, ¶ 22 ("It tortures the concept of a reviewing court's jurisdiction to speak of revestment of jurisdiction on appeal to address issues never presented in the first instance to the trial court."). Moreover, the idea that the State's concession to a substantive fines or fees argument could "revest" this court with jurisdiction would be contrary to our supreme court's directive that the revestment doctrine be applied narrowly. See *People v. Bailey*, 2014 IL 115459, ¶ 16. Given the vast number of fines and fees cases routinely before this court, the exception would literally swallow the rule.

¶ 43    Brown is entitled to presentence custody credit to offset (i) the $10 mental health court assessment, (ii) the $5 youth diversion/peer court assessment, (iii) the $5 drug court assessment, and (iv) the $30 children's advocacy center assessment—a total reduction of $50. We direct the clerk of the court to correct defendant's fines and fees order. We affirm the judgment in all other respects.

¶ 44    Affirmed as modified.