No. 2--05--1265          Filed: 12-27-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05--CF--1579 |
| JORGE A. MOREIRA, | ) ) ) | Honorable Perry R. Thompson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE CALLUM delivered the opinion of the court:

Following a bench trial, defendant, Jorge A. Moreira, was convicted of home invasion (720 ILCS 5/12--11(a)(2) (West 2004)) and residential burglary (720 ILCS 5/19--3(a) (West 2004)). The trial court denied defendant's motion for a new trial and sentenced him to concurrent 12- and 10-year terms of imprisonment. Defendant appeals, challenging the sufficiency of the evidence for the two convictions and arguing that his sentences are excessive. We affirm.

I. BACKGROUND

Margaret Gubbins, age 25 and the victim, testified that, on May 30, 2005, she was alone in her apartment, No. 11, at 2239 Oak Ridge Drive in Aurora. She lived there with her boyfriend. The unit is a ground-level apartment with an entry door and a sliding glass patio door. Shortly before midnight, Gubbins left her apartment to purchase cigarettes. She exited through the entry door, which automatically locks. She testified that the sliding glass door was probably unlocked. Gubbins

had had several beers during the day, but believed that she was not intoxicated. She was gone for about 15 or 20 minutes.

When she returned sometime after midnight, Gubbins noticed that someone was walking in her apartment. She thought that it was her boyfriend. Gubbins unlocked her front door, entered the unit, and turned on the lights. She saw a figure lying on the floor behind the couch. Gubbins first thought that it was her boyfriend, but then, when the head popped up, she noticed that it was defendant. Gubbins screamed, "[w]hat the f--- are you doing in my apartment?" Defendant stood up and looked shocked. According to Gubbins, she kept yelling at defendant to stay in place. She attempted to retrieve her telephone to call 911. Defendant spoke to Gubbins in Spanish, which she does not speak. It sounded like he was saying "no, no, no...senora, senorita." Defendant had his hands up in front of him, palms facing out.

Gubbins locked the front door, which was behind her, grabbed her telephone, and walked toward the sliding glass door to lock it. She wanted to keep defendant in her apartment because she thought that he was stealing from her and she wanted to call 911. Before she reached the door, defendant tried to grab the telephone out of her hand and started hitting her arm. Gubbins denied that she told a police officer that she locked the patio door. Defendant then "shoved" Gubbins onto the ground and started punching her in the eye. Defendant also bit Gubbins on the forehead, wrist, and back. He reached underneath her shirt and bra and fondled her breast. Defendant attempted to pull down Gubbins's shorts. Gubbins tried to scream, but defendant covered her mouth with his hand. He used his other hand to stick his fingers up her nose.

Gubbins stopped fighting for a bit, and defendant eased up. Gubbins, who is 5 feet 11 inches tall, was then able to stand while struggling with defendant. As she fought with defendant, she

grabbed a steak knife off of the kitchen counter and held it to defendant's rib cage. She did not stab him. Gubbins continued holding the knife at defendant's side and made her way toward the front door. She opened the door and screamed for help. Defendant released Gubbins and ran down the sidewalk. Gubbins fell to the ground outside of her front door and wept.

A neighbor across the complex and above Gubbins's apartment offered to call 911. Two men on the balcony across the way asked Gubbins what had happened, and Gubbins replied that someone had tried to rape and kill her. She saw a neighbor run after defendant. An ambulance arrived and transported Gubbins to the hospital. She sustained swelling to her right eye, scratches on her face, rug burns to her knees, bite marks on her wrist and forehead, and bruises on her back. Gubbins identified undergarments that were retrieved from defendant's car as belonging to her.

Michael Laha lives at 2279 Oak Ridge Drive, which is across the street from Gubbins's apartment. Laha testified that he was sitting at his computer in his apartment when he heard Gubbins scream. He looked out and saw defendant, Gubbins, and a man running. Laha heard Gubbins scream "help" and "he just tried to rape me, he attacked me." He ran out of his apartment and chased after defendant. The chase ended in a subdivision about three-quarters of a mile from the apartment complex. Defendant appeared tired and wore only one shoe. His hand was bleeding.

Officer Ron Hinterlong of the Aurora police department testified that he took defendant into custody. At the time of his arrest, defendant had "quite a bit of blood" on his right hand and back. Officer Hinterlong called an ambulance for defendant. After he was treated at the hospital, defendant was taken to the police department. Following a search, officers collected from defendant nylon stockings from his right front pants pocket and a pair of female underwear from his right rear pants

pocket. Officer Hinterlong testified that defendant wore only one shoe. Hospital personnel informed Hinterlong that defendant sustained a stab wound to his back. The cut was half an inch long.

Officer Guerrmo Trujillo of the Aurora police department testified that he interviewed defendant at the police department. Defendant consented to a videotaped statement. He appeared alert, and there were no signs that he was intoxicated. Defendant stated that, on May 30, 2005, he was sitting in his car in the parking lot of his apartment complex at 2231 Oak Ridge Drive, drinking beer and listening to music. Defendant lived in his sister's apartment, No. 7. He had started drinking early in the afternoon and had consumed about 12 beers. Defendant noticed Gubbins across the parking lot. She was sitting on her patio, having a few beers. Defendant was attracted to her and was trying to build the courage to offer her a beer and socialize with her. Defendant ran out of beer, and he went into his apartment to get more. When he returned to his car, he noticed that Gubbins was gone. Defendant took two beers and walked across the lot to Gubbins's patio. The screen door was shut, but the sliding door was partially open. Defendant told Trujillo that he did something wrong when he decided to enter Gubbins's apartment.

According to Trujillo, defendant stated that, once he was inside, he kept calling for Gubbins, but there was no answer. He saw that a bedroom door was open, and he entered. Defendant noticed that a dresser drawer was partially opened, and he looked inside. He saw undergarments. Defendant took some of the undergarments and exited the apartment and walked to his car. He put some of the items in the backseat of his car and kept some on his person. Defendant then noticed that he had lost his keys. He returned to Gubbins's apartment to search for his keys. Defendant was on the floor by the couch when Gubbins walked in through the front door. He got scared. Gubbins screamed and

asked what defendant was doing in her apartment. Defendant asked her not to call the police. There was a language barrier because defendant spoke Spanish and Gubbins spoke English.

Gubbins walked to the sliding door and shut it. She then reached for the telephone, and defendant tried to take it away from her. A struggle ensued. Couches were flipped over, and Gubbins likely hit her head on a wall. Defendant hit Gubbins because she hit him. Gubbins was able to grab a knife in the kitchen and took a lunge at defendant. She stabbed him. Defendant tried to take the knife away from Gubbins. He reached for the knife and then pulled his hand back, receiving a laceration on his right hand. Gubbins then opened the front door, and defendant fled. Undergarments were discovered in defendant's car. His keys were never recovered.

Trujillo interviewed Gubbins at the hospital about one hour after the incident. She told him that she locked the patio door while defendant was in her apartment. Gubbins never mentioned to Trujillo that defendant put his hand over her mouth and his fingers up her nose, nor did she state that defendant put his hand down her shirt and touched her breast. Gubbins also did not mention that defendant tried to pull down her pants or panties.

Officer William Vogel of the Aurora police department testified that he interviewed Gubbins at the scene. Gubbins told him that defendant said "no police, no police" after she first walked in on him. She thought that he had gained entrance through the patio door. Gubbins never told Vogel that defendant tried to pull down her pants or panties.

In the videotaped interview, defendant stated that, during his first entry into Gubbins's apartment, he took undergarments. After he returned to look for his keys, he saw a gun and bullets under a bed. He "didn't pay attention to that" and went to the living room, where Gubbins subsequently discovered him. They were both scared. Defendant could not answer her when

Gubbins asked what he was doing in her apartment. He "just want[ed] to get out of there." Gubbins started fighting after defendant tried to take away her telephone. They tripped on furniture, and Gubbins might have hit her head on the wall. Gubbins tried to bite defendant. Defendant stated, "That's when I think I hit her because it hurt me."

Gubbins did not let go. Defendant wanted to take her to the kitchen and leave her there so that he could exit through the front door. Gubbins poked defendant with the knife. It was not "serious." However, "[t]hat's when [he] got really scared." Defendant grabbed the knife. They were close to the front door. Gubbins opened the door, and defendant fled. Defendant conceded that he entered Gubbins's apartment without permission. When asked why he took Gubbins's undergarments, defendant replied, "At that moment you don't know. Just to have them there. Took them as a trophy."

Gubbins is taller than defendant. The evening of the incident was the first time that defendant attempted to interact with Gubbins. When he entered the apartment, only the television was on to provide light.

The trial court found defendant guilty of one count of home invasion causing bodily harm and one count of residential burglary with the intent to commit a theft. Defendant's motion for a new trial was denied. At the sentencing hearing, Gubbins presented a victim impact statement in which she described the physical and emotional pain she endured as a result of the incident. She stated that she no longer has a sense of safety when she is alone in her home. Defendant apologized to Gubbins and stated that he had no intention of abusing her and that he was very drunk when he entered her home. He further stated that he was sorry that he hit her.

In a written statement, defendant stated that he felt very sad on May 30, 2005, because his mother, who had been visiting from Honduras, left to return to her home. Addressing the incident, defendant wrote that what he did was "stupid" and that he was remorseful. He stated that he re-entered Gubbins's home to retrieve his keys. His intention was always to leave Gubbins's apartment. If defendant had wanted to hurt her, he would have grabbed the gun he saw under the bed or he would have hidden in the apartment. Defendant also wrote a letter of remorse to Gubbins.

The presentence report noted that defendant's only previous adult criminal history involved a conviction of transportation of alcohol by a passenger. His parents and a sister reside in Honduras, and another sister lives in Aurora. Defendant, who is single, illegally immigrated to the United States in 1999. He is 5 feet 6 inches tall and weighs 185 pounds. Defendant's parents wrote a letter expressing their support for their son and stating that they were shocked to find out about his troubles and that he has always been well-behaved.

The trial court sentenced defendant to 12 years' imprisonment on the home invasion count. On the residential burglary count, the court sentenced defendant to 10 years' imprisonment, to run concurrently with the home invasion sentence. In announcing the sentences, the court noted that there were "relatively few" aggravating factors and "some" mitigating factors. The court further noted that it found significant that defendant entered Gubbins's apartment twice; that he snuck in like "a thief"; and that he engaged in a "battle" with Gubbins as she tried "to exercise her rights and her security." The court further noted Gubbins's testimony that defendant took away her sense of security in her home.

The trial court admonished defendant of his appeal rights pursuant to Supreme Court Rule 605(a) (210 Ill. 2d R. 605(a)). Defendant did not move to reconsider his sentences. He appeals.

## II. ANALYSIS

### A. Home Invasion

Defendant argues first that the evidence was insufficient to sustain the home invasion conviction. According to defendant, the legislature did not contemplate the facts in this case when it enacted the home invasion statute. He contends that he did not expect anyone to be present when he entered Gubbins's apartment to look for his keys and that he intended to leave before Gubbins returned. He had no intention of compromising the personal safety of anyone inside the home. Accordingly, defendant requests that this court reverse the home invasion conviction or, alternatively, reduce his conviction to criminal trespass to a residence (720 ILCS 5/19--4(a)(1) (West 2004)) and battery (720 ILCS 5/12--3(a) (West 2004)) and remand for resentencing.

When a defendant challenges the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Cunningham, 212 Ill. 2d 274, 278 (2004). Although the trier of fact is responsible for assessing the credibility of the witnesses and weighing the testimony, its determination is not conclusive. People v. Smith, 185 Ill. 2d 532, 542 (1999). Rather, we will reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. Smith, 185 Ill. 2d at 542. Statutory interpretation presents a question of law, which we review de novo. People v. Bradley M., 352 Ill. App. 3d 291, 294 (2004).

The home invasion statute provides, in relevant parts:

"(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority *** he or she knowingly enters the dwelling place of another

-8-

and remains in such dwelling place until he or she knows or has reason to know that one or more persons is present and

***

(2) Intentionally causes any injury *** to any person or persons within such dwelling place[.]"  720 ILCS 5/12--11(a)(2) (West 2004).

The purpose of the home invasion statute is to protect the safety of persons in their homes. People v. Shelby, 123 Ill. App. 3d 153, 163 (1984).

Defendant contends that there was no evidence that he lay in wait for Gubbins or that he remained in her home to intentionally cause her injury.  Rather, the evidence showed that, at the time that the injury occurred, defendant did not remain in the home because he was not intending to stay; he intended to leave.  Addressing his second entry into Gubbins's home, defendant notes that the evidence showed that he was not lying in wait for her to return, but was shocked when Gubbins entered.  Furthermore, he notes that he did not remain in the home once he knew that Gubbins was present.  He wanted to leave as soon as possible. According to defendant, he did not remain with the intention of harming Gubbins.  Rather, the harm occurred because he was trying to leave.  Defendant notes that he entered Gubbins's apartment unarmed as additional evidence that he was not lying in wait.  This established that he did not expect anyone to be present and that he had no intention of compromising the personal safety of anyone inside.  In sum, defendant concedes that he entered Gubbins's home without authority and caused injury to her.  He argues that the offense was not home invasion because he did not lie in wait for Gubbins to come home and remain there with the intent to threaten her personal safety or to cause her harm.

Defendant's arguments are based on his reading of the home invasion statute. Defendant contends that the word "remains" in the statute is ambiguous in that it could be interpreted to mean merely still being present in the dwelling place or more deliberately waiting in the dwelling place. Given this alleged ambiguity, defendant urges that we examine the legislative history of the statute, which he reads as clarifying that the legislature added a requirement that the alleged offender lie in wait for a person to enter the dwelling before causing injury to that person.

We do not address the legislative history, because we conclude that the statute is unambiguous. Mere use of the word "remains," without more, indicates a legislative intent to require only that the unauthorized entrant be present in the dwelling. We do not agree with defendant that, as written, the word "remains" could be read to mean either purposely waiting or simply still being present. Had the legislature intended that the entrant remain in the dwelling for a particular reason, it would have included statutory language evincing that intent. In our view, use of the word "remains" merely requires that the unauthorized entrant be present in the dwelling, regardless of whether he or she intends to wait for a person to enter the dwelling. As the State notes, had the legislature desired to include as an element of home invasion the requirement that a person remain in the dwelling for the purpose of causing injury to another, it would have included language similar to that for the offense of residential burglary, which occurs when a person "knowingly and without authority enters or knowingly and without authority remains within the dwelling place of another, or any part thereof, with the intent to commit therein a felony or theft." 720 ILCS 5/19--3(a) (West 2004).

Moreover, the statute provides that it is an affirmative defense to a home invasion charge when:

"the accused who knowingly enters the dwelling place of another and remains in such dwelling place until he or she knows or has reason to know that one or more persons is present either immediately leaves such premises or surrenders to the person or persons lawfully present therein without either attempting to cause or causing serious bodily injury to any person present therein." 720 ILCS 5/12--11(b) (West 2004).

Although defendant did not raise this defense below, the provision clearly refutes his argument on appeal that the legislature did not contemplate the facts in this case when it enacted the statute. The legislature did contemplate these facts, and it provided a defense to a home invasion charge if a defendant in defendant's position immediately leaves or surrenders without causing or attempting to cause injury. Had defendant left Gubbins's premises or surrendered to her without causing her serious bodily injury, he could have invoked an affirmative defense to home invasion. However, defendant did injure Gubbins, depriving himself of the affirmative defense and leaving himself squarely within the reach of subsection (a)(2).

Given our interpretation of the statute and defendant's concessions that he entered Gubbins's home without authority and that he injured her, we conclude that the evidence was sufficient to sustain defendant's home invasion conviction.

### B. Residential Burglary

Next, defendant argues that the State failed to prove beyond a reasonable doubt that he committed residential burglary. He contends that the evidence did not establish that, at the time he entered Gubbins's apartment, he intended to commit a theft therein. Defendant requests that we reverse his conviction or, alternatively, reduce it to criminal trespass to a residence and theft and remand the cause for resentencing.

As we noted above, the residential burglary statute states that a person commits residential burglary when he or she "knowingly and without authority enters or knowingly and without authority remains within the dwelling place of another, or any part thereof, with the intent to commit therein a felony or theft." 720 ILCS 5/19--3(a) (West 2004). "To obtain a conviction for residential burglary, the State must prove that the offender's entry into a dwelling was both without authority and with the intent to commit a felony or a theft." In re Matthew M., 335 Ill. App. 3d 276, 282 (2002). Intent may be inferred from surrounding circumstances and may be proved by circumstantial evidence. People v. Maggette, 195 Ill. 2d 336, 354 (2001). "A [fact finder] may infer the offender's intent to commit a residential burglary from proof that the offender unlawfully entered a building containing personal property that could be the subject of a larceny." Matthew M., 335 Ill. App. 3d at 282-83. "The inference is grounded in human experience which justifies the assumption that the unlawful entry was not purposeless, and in the absence of other proof, indicates theft as the most likely purpose." People v. Rossi, 112 Ill. App. 2d 208, 212 (1969). Other relevant circumstances include the time, place, and manner of entry into the premises, the offender's activity within the premises, and any alternative explanations offered for the offender's presence. Maggette, 195 Ill. 2d at 354.

Defendant asserts that his intent when he entered Gubbins's apartment was simply to introduce himself. He argues that his testimony was unrebutted that he told the police that he had noticed Gubbins when she was sitting on her patio and that he wished to become acquainted with her. Defendant wanted to offer her a beer and, so, went inside his apartment to get more beer. When he went back outside, Gubbins was no longer there. According to defendant, there was no evidence that he had seen Gubbins leave her apartment. He further notes that he testified that he knocked on her

door and called for her. When nobody answered, he walked inside to see if she was in the apartment. Defendant continued to call for Gubbins while he was in the apartment. This attempt to identify himself, according to defendant, was inconsistent with having a larcenous intent when he entered the home. He also points to his response to the police when asked why he took Gubbins's underwear: "At that moment, you don't know. Just to have them there. Took them as a trophy." Defendant asserts that this statement shows that his intent to take the items was formulated after he entered the apartment and not before that time.

We conclude that no reversal is warranted. Defendant did not approach Gubbins's apartment via the front entrance, nor did he knock on the front door. Rather, he walked to the back of the unit and entered via the patio door. We reject defendant's assertion that the trial court made an unreasonable inference when it stated that defendant snuck in through the patio door. Notwithstanding defendant's self-serving testimony that he knocked on the patio door after he saw Gubbins sitting there and called out for her before entering, defendant nevertheless entered the apartment of a person he conceded he did not know (after watching her for several hours), via the rear entry, after midnight, and without any indication that the occupant was inside. It was not unreasonable for the trial court to find that defendant possessed the requisite intent to commit a theft at the time of entry. The court was not required to find that defendant's entry via the patio door was, as defendant suggests, consistent with his statement that he saw Gubbins there all day and therefore went to her apartment to meet Gubbins and not to commit a theft. Nor was the court required to find credible defendant's statement that he decided to take Gubbins's undergarments as trophies on the spur of the moment. Again, given the circumstances of his entry into the apartment and viewing the

evidence in the light most favorable to the State, the trial court reasonably could find that, at the time of entry into Gubbins's apartment, defendant intended to commit a theft.

In sum, we find that the evidence was sufficient to sustain defendant's residential burglary conviction.

### C. Sentences

Finally, defendant argues that his sentences are excessive and requests that we reduce them. He contends that his criminal history consists only of one petty offense, that his background and family support suggest that his prospects for rehabilitation are very good, and that his character and attitude about the crime show that he is unlikely to commit another crime.

"The propriety of a sentence is a matter lying within the discretion of the trial court, and we will not interfere with that discretion unless it is abused." People v. Sven, 365 Ill. App. 3d 226, 241 (2006). A sentence is deemed excessive and represents an abuse of discretion only where "the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." People v. Stacey, 193 Ill. 2d 203, 210 (2000).

Preliminarily, we note that defendant was admonished pursuant to Supreme Court Rule 605(a)(3) (210 Ill. 2d R. 605(a)(3)) about the necessity of filing a motion to reconsider his sentence to preserve any sentencing issues for appellate review. However, defendant did not file a motion to reconsider his sentences. He requests that we review his sentences for plain error.

Generally, the failure to file a motion to reconsider a sentence waives any sentencing issues for review. People v. Reed, 177 Ill. 2d 389, 393-94 (1997). However, we may review the issues under the plain-error doctrine. See People v. Breedlove, 213 Ill. 2d 509, 521-22 (2004) (a Rule 605(a) defendant who fails to properly preserve sentencing issues for appeal is not precluded from

raising a sentencing issue on appeal under the well-established plain-error doctrine). When reviewing a sentence for plain error, a court must first determine whether error occurred at all. People v. Price, 375 Ill. App. 3d 684, 696 (2007). If the court identifies an error, it must next consider whether the defendant can obtain relief under either of the two prongs of the plain-error rule: (1) the evidence was closely balanced; or (2) the error was of such gravity as to deny the defendant a fair proceeding. Price, 375 Ill. App. 3d at 696. Here, we do not find any error in the trial court's sentences, and, therefore, do not consider whether defendant can meet either of the two prongs of the plain-error rule.

"The defendant's history, character, rehabilitative potential, the seriousness of the offense, the need to protect society and the need for deterrence and punishment are all factors to be considered in fashioning a sentence." People v. Donath, 357 Ill. App. 3d 57, 72 (2005). "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and the court is presumed to have considered any evidence in mitigation that is before it." People v. Bowman, 357 Ill. App. 3d 290, 303-04 (2005). It is not our function to reweigh the relevant sentencing factors or substitute our judgment for that of the trial court. People v. Streit, 142 Ill. 2d 13, 19 (1991).

A conviction of home invasion carries a sentence of anywhere from 6 years to 30 years in prison. 720 ILCS 5/12--11(c) (West 2004); 730 ILCS 5/5--8--1(a)(3) (West 2004). A conviction of residential burglary carries a sentence of anywhere from 4 to 15 years in prison. 720 ILCS 5/19--3(b) (West 2004); 730 ILCS 5/5--8--1(a)(4) (West 2004). The trial court sentenced defendant to concurrent terms of 12 years' imprisonment for home invasion and 10 years' imprisonment for residential burglary. In announcing the sentences, the trial court noted that it found significant that

defendant entered Gubbins's apartment twice; that he snuck in like "a thief"; and that he engaged in a "battle" with Gubbins as she tried "to exercise her rights and her security." The court further noted Gubbins's testimony that defendant took away her sense of security in her home. Defendant asserts that the trial court's sentences of twice the statutory minimums are disproportionate to the offenses because the court did not adequately take into account defendant's rehabilitative potential.

We conclude that the trial court did not abuse its discretion. Defendant does not allege that the trial court considered incompetent evidence or improper aggravating factors or ignored pertinent mitigating factors. Rather, he contends that the court erred because it failed to accord sufficient weight to his rehabilitative potential and other mitigating factors. Although defendant correctly notes that his lack of significant criminal history weighs in favor of lesser sentences, as do his supportive family, steady employment, and remorse, the trial court found significant that defendant chose to engage in a physical altercation with Gubbins when she discovered him in her apartment. We cannot conclude that this finding was unreasonable. As the trial court noted, Gubbins wrote in her victim impact statement that defendant took away her sense of security in her own home. Gubbins testified that she sustained swelling to her right eye, scratches on her face, bite marks on her wrist and forehead, and bruises on her back. Defendant, thus, engaged in a physical altercation with Gubbins that was beyond the minimum necessary to commit home invasion. See 720 ILCS 5/12--11(a)(2) (West 2004) (statute requires that defendant intentionally cause "any injury"). We further note that, as to the residential burglary conviction, defendant twice entered Gubbins's apartment. See People v. Evans, 373 Ill. App. 3d 948, 968 (2007) ("the most important factor a court considers when deciding a sentence is the seriousness of the offense"); see also People v. Huddleston, 212 Ill. 2d 107, 145 (2004) ("[a] court may well find that the seriousness of the offense outweighs any expression of

sorrow"). We conclude that it was not an abuse of discretion to find that defendant's violent response, along with his unlawful entries into Gubbins's apartment, weighed heavily in aggravation. Accordingly, we uphold the sentences.

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GROMETER, P.J., and HUTCHINSON, J., concur.