# Illinois Official Reports

## Appellate Court

---

### *People v. Smith*, **2014 IL App (1st) 123094**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRENCE SMITH, Defendant-Appellant. |
| | |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-3094 |
| | |
| Filed | June 13, 2014 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's burglary conviction was reversed, notwithstanding the fact that defendant was in possession of automobile parts near an automobile parts store that had apparently been burglarized, since there was no evidence connecting the parts in defendant's possession to items missing from the store, even though defendant was seen in the alley behind the store, there was no evidence that he was ever inside the store, and there was no corroborating evidence that he entered the store with the intent to commit theft; under those circumstances, no rational trier of fact could have found the elements of burglary were established beyond a reasonable doubt. |
| | |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-11482; the Hon. Lawrence E. Flood, Judge, presiding. |
| | |
| Judgment | Reversed. |

| Counsel on Appeal | Maria A. Harrigan, Adjunct Instructor, DePaul Criminal Appeals Clinic, of Chicago, for appellant. |

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Anne L. Magats, Assistant State's Attorneys, of counsel), for the People.

Panel — JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice Palmer concurred in the judgment and opinion.

## OPINION

¶ 1      Following a bench trial, defendant Terrence Smith was convicted of burglary and, based on his criminal history, was sentenced to a Class X prison term of six years. On appeal, defendant contends the State failed to prove beyond a reasonable doubt that he entered the building he was charged with burglarizing. For the following reasons, we reverse.

¶ 2      At trial, Dario Cannon testified that he lived near 5900 West Rice in Chicago, across the alley from an auto parts store that had been closed for some time. The back of the store was surrounded by a chain link fence that had an opening in it large enough for a person to fit through. At around 5 p.m. on June 20, 2011, Cannon was in the alley and noticed that his garbage can had been moved from its usual place to an area across the alley by the store. He also observed a man in the next alley over, going through garbage cans and putting items into a garbage can that he was pushing.

¶ 3      Cannon went into his home, then came back out into the alley about 10 minutes later. At that time, he observed a different man (later identified as defendant), wearing a blue hat and a red handkerchief around his neck, entering the opening in the fence behind the auto parts store. Cannon stated that after the man entered, "I couldn't see him because he went towards the right and it's a garage there that blocks your vision." About 10 minutes later, the man threw some pipes and auto parts over the fence, then came out into the alley and placed them into a city garbage can. He then rolled the garbage can into the next alley and met up with the man who had been removing items from garbage cans in that alley. At that point Cannon called the police, who arrived about 10 minutes later. After speaking with Cannon, the police left and returned shortly with defendant, whom Cannon identified as the man he had seen taking the auto parts.

¶ 4      Michael Greene testified that he was the owner of Active Auto Parts, located at 5914 West Chicago Avenue. He described the store as a brick building with two garages in the back, enclosed by a chain link fence for storage. The store was no longer in use, but Greene inspected

the premises on a "biweekly, weekly basis," and had inspected it about a week before the June 20 incident. At that time, there was a hole in the fence, and Greene stated that "periodically I had trouble with them cutting holes in my fence." During his inspections of the premises, Greene would go inside the building and look at the shelf "to see what's there and what's not," but he did not conduct an inventory.

¶ 5    Greene received a call from police on June 20, 2011, about a burglary at the store. When he went to the premises, he found that there were items missing, including struts, or shock absorbers, brake pads, and springs. When asked if anything else was missing, Greene responded, "At that particular time, I can't remember, no." Greene did not know defendant and did not give him permission to enter the premises or remove property from it.

¶ 6    Chicago police sergeant Joanna Jaromin testified that she and her partner, Officer James Rasso, were dispatched to the area of the auto parts store to look for "a male black wearing a blue hat with a red handkerchief." After speaking with Cannon, the officers observed defendant, who fit the description, on the next block pushing a black City of Chicago garbage can with an open lid. They stopped defendant and observed that the can contained "a lot of different parts, car parts, aluminum and different material," including "mufflers, pipes [and] bolts." Sergeant Jaromin did not notice aluminum cans in the garbage can. The officers arrested defendant and returned to the auto parts store. Upon inspecting the premises, Sergeant Jaromin discovered a hole in the fence and observed that the garage door had been kicked in and a window was broken. However, there was no way to tell whether the damage was recent. The officers took the garbage can and its contents to the police station to be inventoried.

¶ 7    Sergeant Jaromin testified on cross-examination that there was a second man with defendant who was also pushing a garbage can, but he was not arrested because he did not fit the description given by Cannon and the can he was pushing "wasn't pertaining [*sic*] any stolen parts."

¶ 8    Detective Scott E. Shewchuk testified that he interviewed defendant at the police station. After being advised of his constitutional rights, defendant stated that he picked up some property, including struts, bolts, mufflers, and pipes, from the alley of 5900 West Rice, and put it into a garbage can he had obtained on another block. Defendant stated that he knew the property was stolen, "as he realized it wasn't his."

¶ 9    Defendant testified that at the time of his arrest he was rolling a City of Chicago garbage can containing two or three bags of aluminum cans to a scrap yard, where he was going to sell them. He was with another man, named Demetrius, who was also pushing a garbage can. According to defendant, they were stopped by Officer Rasso, who said he did not know why he was stopping the men and would check with his partner. Officer Rasso eventually arrested both men and told them they were being charged with burglary. Defendant denied breaking into Active Auto Parts and said that the store had been closed for three years and was "abandoned."

¶ 10    In finding defendant guilty, the trial court rejected defendant's version of events and stated that the evidence was sufficient to show that defendant had entered the auto parts store and had stolen property that was being stored there by the owner. The trial court sentenced defendant to the minimum Class X prison term.

¶ 11    On appeal, defendant challenges the sufficiency of the evidence, arguing that (1) he was observed entering only the surrounding lot and not the actual building; (2) the owner of the auto parts store did not conduct an inventory, so that no specific items were shown to be

missing, and (3) the store had been closed for a year, and the State could not establish that the damage to the door and window were of recent origin.

¶ 12    In reviewing a challenge to the sufficiency of the evidence, this court will consider the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard applies whether the evidence is direct or circumstantial. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000).

¶ 13    A person commits burglary when, "without authority he knowingly enters or without authority remains within a building *** or any part thereof, with intent to commit therein a felony or theft." 720 ILCS 5/19-1 (West 2010). A conviction for burglary may be proved by circumstantial evidence as long as "the elements of the crime have been proven beyond a reasonable doubt." *People v. McGee*, 373 Ill. App. 3d 824, 832 (2007) (citing *People v. Hall*, 194 Ill. 2d 305, 330 (2000)). "Circumstantial evidence is 'proof of facts and circumstances from which the trier of fact may infer other connected facts which reasonably and usually follow according to common experience.' " *People v. McPeak*, 399 Ill. App. 3d 799, 801 (2010) (quoting *People v. Stokes*, 95 Ill. App. 3d 62, 68 (1981)). The fact and manner of entry, as well as the requisite intent, may be inferred from the facts in evidence (*People v. Rhodes*, 81 Ill. App. 3d 339, 344 (1980)), and it is the responsibility of the trier of fact to draw reasonable inferences from basic facts to ultimate facts (*Jackson*, 443 U.S. at 319). In determining whether an inference is reasonable, the trier of fact need not look for all possible explanations consistent with innocence or "be satisfied beyond a reasonable doubt as to each link in the chain of circumstances." (Internal quotation marks omitted.) *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007). Instead, it is sufficient if all the evidence, taken as a whole, satisfies the trier of fact that the defendant is guilty beyond a reasonable doubt. *People v. Edwards*, 218 Ill. App. 3d 184, 196 (1991).

¶ 14    A defendant's possession of recently stolen property is not, alone, enough to sustain a burglary conviction. *McGee*, 373 Ill. App. 3d at 833 (citing *People v. Housby*, 84 Ill. 2d 415, 423 (1981)). In *Housby*, the supreme court held that guilt may be inferred based on a defendant's exclusive possession of recently stolen property if three requirements are met: (1) there was a rational connection between defendant's recent possession of stolen property and his participation in the burglary; (2) the defendant's guilt of the burglary more likely than not flowed from his recent, unexplained and exclusive possession of the proceeds; and (3) there was corroborating evidence of the defendant's guilt. *Housby*, 84 Ill. 2d at 424. We acknowledge that the issue in *Housby* was not sufficiency of the evidence. See *People v. Richardson*, 104 Ill. 2d 8, 12 (1984) (finding the "*Housby* test applies only to instructions which advise a jury of inferences it may draw; it insures that the jury applies the reasonable-doubt test"). However, we still find the test to be applicable in the present case. As the First District explained in *People v. Natal*, 368 Ill. App. 3d 262 (2006):

    "*Housby* dealt with the formulation of a three-part test for determining whether an instruction, which advised the jury in a burglary case that the defendant's guilt could be inferred from his exclusive and unexplained possession of recently stolen property, violated the due process clause of the United States Constitution. However, the same (or a similar) test can be used by any fact finder to determine the ultimate facts beyond a reasonable doubt. Regardless of which test or rationale a trial court uses to determine

- 4 -

guilt or innocence, it must consist of more than the exclusive possession of the property in close proximity to the burglary." *Natal*, 368 Ill. App. 3d at 270.

¶ 15    Taking this into consideration, we conclude that, in the present case, the evidence was insufficient to find defendant guilty of burglary beyond a reasonable doubt. First, no evidence was presented connecting the items in defendant's cart to the missing items from the auto parts store. Greene, the owner of the auto parts store, testified that the last time he had inspected his property was a week before June 20, at which time he noticed the hole in the fence. Greene did not take inventory, but he testified that he noticed items missing from his store on June 20, including shock absorbers, brake pads, and springs. Cannon testified that he observed defendant throw "pipes and auto parts" over the fence into the alley. Sergeant Jaromin testified that when she and her partner stopped defendant, she observed "a lot of different parts, car parts, aluminum and different material" including "mufflers, pipes [and] bolts" inside the garbage can defendant was pushing. However "there must be *some* evidence giving rise to a reasonable inference of defendant's guilt; the State may not leave to conjecture or assumption essential elements of the crime." (Emphasis in original.) *People v. Laubscher*, 183 Ill. 2d 330, 335-36 (1998). Here, the State introduced no evidence to link defendant's possession of "pipes and auto parts" or "mufflers, pipes [and] bolts" to those items taken from inside the auto parts store. No one identified the items in defendant's possession as items taken from the store. Therefore, any conclusion that defendant stole the items in his possession from within the store would be based on conjecture rather than inference. Moreover, although defendant admitted to being in possession of stolen property, his guilt of the burglary did not "more likely than not" flow from his possession of the stolen property here. In addition to the State not presenting evidence to connect the items in defendant's possession to the missing items from the auto parts store, there was no evidence presented that defendant was ever inside the auto parts store. Cannon testified that he observed defendant enter an opening in the fence behind the store, but was unable to locate defendant for the next 10 minutes due to his vision being blocked by a garage. He then observed defendant throwing "pipes and auto parts" over the fence. Cannon never observed defendant inside the store, and in order for defendant to be guilty of burglary, he would have to enter the store. See *In re E.S.*, 93 Ill. App. 3d 171, 174 (1981) (concluding that a fenced-in lot, adjacent to a building, "is not encompassed within the meaning of the word 'building' " in the burglary statute).

¶ 16    Finally, there was no corroborating evidence to suggest that defendant entered the store with the intent to commit theft. Cannon was unable to observe defendant after defendant entered the property through the fence. Jaromin testified that, upon inspecting the premises, she observed a garage door that had been kicked in and a window that was broken, but said there was no way to tell whether the damage was recent. Notably, Cannon did not testify to hearing a door being kicked in or a window breaking. We agree with the court in *Natal* that, "[r]egardless of which test or rationale a trial court uses to determine guilt or innocence, it must consist of more than the exclusive possession of the property in close proximity to the burglary." *Natal*, 368 Ill. App. 3d at 270. Even viewing the evidence in the light most favorable to the State, here the evidence at best showed that defendant was in possession of some stolen items after being in proximity to the auto parts store from which some items were missing. Under these circumstances, we cannot say that any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. See *People v. Parham*, 377 Ill. App. 3d 721, 729 (2007) (reversing the conviction for the burglary of a vehicle where the defendant was

caught in possession of a car stereo under his shirt, but no one observed the defendant open, enter, or take anything from the vehicle, no one testified a stereo had been stolen or was missing from the vehicle, and nothing linked the defendant's possession of the car stereo to the vehicle); see also *Natal*, 368 Ill. App. 3d at 271 (reversing a conviction for residential burglary where the defendant was found a short distance from the residence holding pillowcases containing items of minimal value because the "only evidence the trial court could rationally consider in its decision-making process was the exclusive possession of items of minimal value that were taken in the burglary and were found in close proximity to the offense").

¶ 17    For the foregoing reasons, we reverse defendant's conviction for burglary.

¶ 18    Reversed.