2021 IL App (1st) 190494-U

No. 1-19-0494

Order filed April 2, 2021

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 15527 |
| | ) | |
| JAMES LEWIS, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Delort and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1   *Held*: We affirm defendant's conviction for burglary over his contentions that the evidence presented was insufficient to prove his guilt beyond a reasonable doubt and that his sentence was excessive.

¶ 2   Following a jury trial, defendant James Lewis was found guilty of burglary (720 ILCS 5/19-1(a) (West 2016)) and sentenced, based on his background as a Class-X offender, to nine years and six months' imprisonment. On appeal, he contends that the State's evidence was insufficient to sustain his conviction because the State did not prove beyond a reasonable doubt

that he had the requisite intent. He also asserts that his sentence was excessive because it was disproportionate to the seriousness of the offense. For the following reasons, we affirm.

¶ 3    Defendant was charged by indictment with a single count of burglary. Specifically, the indictment alleged that on October 3, 2017 defendant entered a garage belonging to Arturo Gomez with the intent to commit a theft therein.

¶ 4    At defendant's trial, Gomez testified that he lived in the 2200 block of West Erie in Chicago. He owned a detached "two and a half" car garage that opened onto an alley. He used the garage to store equipment, tools, and other property. On the morning of October 3, 2017, he left the garage door open when he left for work at around 8 a.m. Approximately 15 minutes later, he received a call from his wife. He immediately returned and "found my garage open." He looked inside the garage and noticed that a seven-foot ladder, a folding chair and a small toolbox were missing. Gomez acknowledged that he forgot to close the garage door when he left that morning. He denied that he ever met defendant or gave him permission to enter the garage.

¶ 5    Robert Larocco testified that he lived on the 2200 block of West Ohio Street. On the morning of October 3, 2017, he went into the alley to throw out garbage and noticed a car that was not familiar to him. He saw a man, whom he identified in court as defendant, "stepp[ing] out of a garage with a ladder and toolbox and a chair." Larocco testified that defendant "was coming out of the neighbor's garage" and moving toward a car that was stopped in the alley. Larocco asked defendant if he lived there, and defendant told him that he did. Larocco testified he knew that defendant "wasn't the guy that lived there." Larocco took out his cell phone and "started taking pictures" of defendant, who placed the ladder, chair and toolbox in the trunk of the car and then drove away. Larocco then "went through the garage and knocked on [the] back door" and "Ms.

Garcia" answered.[1] Larocco told her what he had seen and sent her the photographs he had taken with his phone.

¶ 6    On October 8, 2017, Larocco spoke with detectives. After he read a photo lineup advisory form, he identified defendant in a photo array. The advisory form and photo array were admitted as People's Group Exhibit 3, which was published to the jury.

¶ 7    Larocco identified People's Exhibit 1 as a photograph he took of defendant getting into a car, in which the front license plate of the car is visible. He identified People's Exhibit 2 as a second photograph he took of defendant in the alley. People's Exhibits 1 and 2 were admitted and published to the jury.

¶ 8    On cross-examination, Larocco testified that he saw defendant carrying the ladder, chair and toolbox toward the vehicle but did not see the items being placed in the car. When Larocco "turn[ed] around to snap pictures," he saw the items were in the car. He further acknowledged that he did not see defendant inside the garage.

¶ 9    Chicago police officer Ruben Romero testified that on October 8, 2017, he was assigned to locate a vehicle involved in a burglary. He entered a license plate number into a database that indicated a "hit" for the license plate number at a certain location. Romero proceeded to the location and found the vehicle. A short time later, defendant entered the vehicle and was arrested.

¶ 10   Officer Ruben Ramirez testified that he was present when police interviewed defendant on October 8, 2017. According to Ramirez, defendant told police that he "wanted to tell the truth," admitted he had a "drinking problem," and gave details about the burglary. Defendant was shown

---

[1] The first name of "Ms. Garcia" is not identified.

photographs from the date of the incident and "identified himself in the photographs as well as the vehicle belonging to him."

¶ 11    Defendant elected not to testify, and the defense did not present any evidence. Following closing arguments, the jury found defendant guilty of burglary. Defendant's motion for a new trial was denied.

¶ 12    Defendant's presentence investigative report (PSI) reflected that he was born in 1968 and, since 1996, had nine prior felony convictions, including five burglary convictions and one residential burglary conviction. His most recent felony conviction was in 2016 for "aggravated battery/use deadly weapon" for which he was sentenced to five years' imprisonment. The PSI also reflected two pending cases, one in which defendant was charged with burglary and criminal damage to property (case 17 CR 1552601) and a second case in which he was charged with burglary (17 CR 1552801).

¶ 13    At defendant's sentencing hearing, the State noted that his criminal history made him subject to mandatory Class X sentencing. In aggravation, the State emphasized defendant's nine prior felonies. The State also pointed out that both of defendant's pending cases involved him backing his vehicle into a garage door and then attempting to lift the door. The State emphasized that both of those incidents occurred in early October 2017, within a week of the burglary in this case. The State requested the maximum sentence based on defendant's "lengthy history of criminal activity."

¶ 14    In mitigation, defense counsel noted that defendant had worked in a factory and had completed a number of programs while in custody, including job training. Counsel stated that defendant was working to address "addiction issues," and that he had supportive friends and family. With respect to the two pending cases, counsel noted the lack of allegations that defendant

actually entered the garages. Arguing that defendant had been making "good [use] of his time" in custody, defense counsel asked that the court impose the minimum sentence of six years' imprisonment.

¶ 15    In allocution, defendant stated that he was "truly sorry for what I did," that he wanted to "take responsibility," and that it will "never happen again."

¶ 16    In imposing sentence, the court noted that defendant had been "respectful" in court and found that he was sincerely remorseful. The court told defendant that it "t[ook] into consideration the fact that you are accepting responsibility" and stated its belief that defendant had rehabilitative potential.  However, the court also emphasized his criminal history, remarking that "it seems like you pick up case after case." The court pointed out that the October 3, 2017 burglary of Gomez' garage occurred only one week after defendant had been released on parole for his aggravated battery conviction, and remarked that "[i]t does appear that this is your lifestyle." The court sentenced defendant to nine years and six months' imprisonment. Defendant's motion to reconsider sentence was denied.

¶ 17    On appeal, defendant first contends that the State failed to prove his guilt beyond a reasonable doubt.

¶ 18    "When reviewing a challenge to the sufficiency of the evidence, this court considers whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007).  The reviewing court "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). The trier of fact "is not required to disregard inferences that flow from the evidence, nor is it required to search out all possible explanations

consistent with innocence and raise them to a level of reasonable doubt." (Internal quotation marks omitted.) *People v. Peoples*, 2015 IL App (1st) 121717, ¶ 63.

¶ 19　"The reviewing court will not retry the defendant or substitute its judgment for that of the trier of fact on questions involving the weight of the evidence, conflicts in the testimony, or the credibility of witnesses. [Citation.]" *People v. Corral*, 2019 IL App (1st) 171501, ¶ 71. "Only where the evidence is so improbable or unsatisfactory as to create reasonable doubt of the defendant's guilt will a conviction be set aside. [Citation.]" *Id.* ¶ 72.

¶ 20　In this case, to prove defendant guilty of burglary, the State had to prove that he, without authority, "knowingly enter[ed]" Gomez's garage "with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (West 2016).

¶ 21　In this court, defendant does not dispute that he took items from the garage. Rather, he argues that the evidence was insufficient to establish that he entered the garage with the requisite intent to commit a theft therein. Defendant acknowledges that intent may be proved by circumstantial evidence, but he claims that the State improperly relied upon "conjecture and assumption" to prove intent. He argues that, even if he took items, that does not establish his intent to commit a theft *before* he entered the garage. He suggests there are "myriad reasons" why he may have entered the garage and that it is "just as likely that [he] formed an intent" to take the items once he was inside the garage. He maintains that the State failed to present any evidence, direct or circumstantial, that would allow the jury to reasonably infer the requisite intent. On that basis, he asks that we reverse his conviction.

¶ 22　A conviction for burglary may be proved by circumstantial evidence as long as the elements of the crime have been proven beyond a reasonable doubt. *People v. Smith*, 2014 IL App (1st) 123094, ¶ 13. Circumstantial evidence is proof of facts and circumstances from which the

trier of fact may infer other connected facts which reasonably and usually follow according to common experience. *Id.* The requisite intent for burglary may be inferred from the facts in evidence, and "it is the responsibility of the trier of fact to draw reasonable inferences from basic facts to ultimate facts. [Citation.]" *Id.* In determining whether an inference is reasonable, the trier of fact "need not look for all possible explanations consistent with innocence. *Id.* In burglary cases, "[a]ssessing a person's intent at the time of entry is a task that is well within a trier of fact's competency, even if intent must often be proven by circumstantial evidence. [Citations.]" *People v. Johnson*, 2019 IL 123318, ¶ 25 (discussing circumstantial evidence of intent to commit theft from retail store).

¶ 23    After viewing the evidence presented in the light most favorable to the State, we find that the jury could conclude that defendant entered the garage with the requisite intent to support his burglary conviction.

¶ 24    In reaching this conclusion, we are guided by cases discussing the inference permitted to establish the analogous intent required to prove residential burglary. See 720 ILCS 5/19-3(a) (West 2018) (a person commits residential burglary when he or she "knowingly and without authority enters * * * within the dwelling place of another, or any part thereof, with the intent to commit therein a felony or theft."). Our court has recognized that a fact finder "may infer the offender's intent to commit a residential burglary from proof that the offender unlawfully entered a building containing personal property that could be the subject of a larceny." *People v. Moreira*, 378 Ill. App. 3d 120, 129 (2007) (quoting *Matthew M.*, 335 Ill. App. 3d 276, 282-83 (2002)); see also *People v. McKinney*, 260 Ill. App. 3d 539, 544 (1994) (in discussing garage burglary, recognizing that " '[i]n the absence of inconsistent circumstances, proof of unlawful entry into a building which contains personal property that could be the subject of larceny gives rise to an inference that will

sustain a conviction of burglary.' " (quoting *People v. Loden*, 27 Ill. App. 3d 761, 762 (1975)). "The inference is grounded in human experience which justifies the assumption that the unlawful entry was not purposeless, and in the absence of other proof, indicates theft as the most likely purpose." *Moreira*, 378 Ill. App. 3d at 129. "Other relevant circumstances include the time, place, and manner of entry into the premises, the offender's activity within the premises, and any alternative explanations offered for the offender's presence." *Id.* (citing *People v. Maggette*, 195 Ill. 2d 336, 354 (2001)).

¶ 25   In this case, the circumstantial evidence permitted the jury to reasonably infer that defendant entered Gomez' garage with the intent to commit a theft. Gomez testified that the garage opened up to an alley, and that he stored various items within the garage, including a seven-foot ladder, chair and toolbox. On the morning of the incident, Gomez left the garage door open to the alley; from this testimony, the jury could infer that items within the garage could be seen by someone in the alley. Larocco testified that he saw defendant bringing these same items to a car in the alley. The jury could reasonably infer that, from the alley, defendant saw items in the open garage and formed an intent to commit a theft before he entered it. Moreover, Gomez's testimony that he never authorized defendant to enter the garage supported an inference that defendant's "unlawful entry was not purposeless, and in the absence of other proof, indicate[d] theft as the most likely purpose." *Moreira*, 378 Ill. App. 3d at 129.

¶ 26   In his reply brief, defendant notes that the State did not specifically argue to the jury the hypothesis that he was driving in the alley, saw the open garage and formed an opportunity to commit a theft. He asserts that because the State did not argue this "drive-by theory" to the jury, it has been "waived" on appeal. We disagree.

¶ 27    In reviewing the sufficiency of the evidence, we are not constrained to limit our review to the particular evidence mentioned in the State's arguments. Rather, we review all of the evidence presented to the jury and ask whether the jury could reasonably conclude that guilt was proven beyond a reasonable doubt. *Wheeler*, 226 Ill. 2d at 117-18 ("we must ask, after considering all of the evidence in the light most favorable to the prosecution, whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."). Given the evidence presented, we have answered that question in the affirmative.

¶ 28    Defendant nevertheless suggests that, because there was no evidence that he broke into the garage, the State cannot rely on *Moreira* or other cases permitting the "assumption that unlawful entry is not purposeless, and in the absence of other proof, indicates theft as the most likely purpose." 378 Ill. App. 3d at 129. He points out that case law recognizing this inference stems from our supreme court's decision in *People v. Johnson*, 28 Ill. 2d 441 (1963), in which owners of a tavern heard glass breaking and saw defendant enter through a broken door. In the course of affirming the defendant's burglary conviction, our supreme court held: "in the absence of inconsistent circumstances, proof of *unlawful breaking and entry* into a building which contains personal property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary." (Emphasis added.)  *Id.* at 443.

¶ 29    Defendant argues that our supreme court in *Johnson* referred to breaking and entering as supporting the inference of intent, but "did not opine that unlawful entry, which would include entry with or without force, was sufficient to give rise to the inference." In turn, he urges that there must be a forcible breaking and entering to justify an inference of an intent to commit a theft. He maintains that mere unlawful entry "does not generate the same inference." He acknowledges that a number of decisions of our court have stated that "unlawful entry" gives rise to the inference of

unlawful intent. See, *e.g.*, *Moreira*, 378 Ill. App. 3d at 129; *People v. Boguszewski*, 220 Ill. App. 3d 85, 88 (1991); *People v. Collins*, 53 Ill. App. 3d 114, 119 (1977). However, he argues that such decisions "unwittingly disregarded the limitation of the inference" derived from *Johnson* and are "missing language" requiring a forcible breaking and entering to justify an inference of intent to commit theft.

¶ 30    Defendant essentially suggests that because our supreme court in *Johnson* referred to "breaking and entry" as supporting an inference of intent to commit theft, this inference may not be drawn from an unlawful entry *without* the use of force. However, nothing in *Johnson* prohibits a jury from making that inference. We decline to disregard this court's precedent that "unlawful entry into a building containing personal property that could be subject of larceny gives rise to an inference of intent sufficient to sustain a burglary conviction," in the absence of circumstances inconsistent with an intent to commit a theft. *Boguszewski*, 220 Ill. App. 3d at 88.[2]

¶ 31    In sum, viewing the evidence in the light most favorable to State, the jury could reasonably infer that defendant formed an intent to commit a theft before he entered the open garage. In other words, we cannot say the evidence is so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt. *Corral*, 2019 IL App (1st) 171501, ¶ 72.

¶ 32    Defendant next contends that his sentence of nine years and six months' imprisonment was an abuse of discretion because it was disproportionate to the seriousness of the offense.

¶ 33    "The Illinois Constitution requires a trial court to impose a sentence that achieves a balance between the seriousness of the offense and the defendant's rehabilitative potential." *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. In doing so, the court must consider aggravating and

---

[2] Notably, defendant does not identify any circumstances in the record of this case that are inconsistent with an intent to commit a theft.

mitigating factors including "the nature and circumstances of the crime, the defendant's conduct in the commission of the crime, and the defendant's personal history," including criminal history. *Id.*

¶ 34 A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial court has a far better opportunity to consider these factors than the reviewing court. *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010). "[T]he reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000).

¶ 35 The trial court's discretion "is not without limitation," as Supreme Court Rule 615(b)(4) grants the reviewing court the power to reduce the sentence imposed. *Id.*; Ill. S. Ct. R. 615(b)(4). However, "[a] reviewing court may only reduce a sentence under Illinois Supreme Court Rule 615 when the record shows that the trial court abused its discretion. [Citation.]" *People v. Busse*, 2016 IL App (1st) 142941, ¶ 20.

¶ 36 After reviewing the record, we conclude the trial court did not abuse its discretion when it sentenced defendant to nine years and six months' imprisonment. Burglary of a building is a Class 2 felony, which ordinarily implicates a sentencing range of 3 to 7 years. 720 ILCS 5/19-1 (West 2018), 730 ILCS 5/5-4.5-35(a) (West 2018). However, because defendant had two prior Class 2 or greater Class felony convictions, he was subject to mandatory sentencing as a Class-X offender. 730 ILCS 5/5-4.5-95(b) (West 2018). In turn, the applicable sentencing range was 6 to 30 years' imprisonment. 730 ILCS 5/5-4.5-25 (West 2018).

¶ 37 Because defendant's sentence of nine years and six months is within statutory guidelines, it is "presumed to be proper" and "will not be disturbed absent an affirmative showing that the sentence is at variance with the purpose and spirit of the law or is manifestly disproportionate to

the nature of the offense." *Knox*, 2014 IL App (1st) 120349, ¶ 46. Defendant has not made that showing.

¶ 38    In this court, defendant urges that his sentence was disproportionate to the seriousness of the offense. He argues that he only took "three relatively insignificantly valued items" from an open garage, did not cause any damage, and did not threaten harm to any person. He also notes the trial court's comments that he was respectful, remorseful, and had rehabilitative potential. Under these circumstances, he claims the court abused its discretion by imposing "almost a decade of incarceration." He requests that this court reduce his sentence to the minimum of six years. In support of this argument, defendant cites to other cases where a reviewing court reduced sentences as disproportionate to the seriousness of the offense. See *Stacey*, 193 Ill. 2d 203 (reducing consecutive 25-year sentences for criminal sexual abuse and aggravated criminal sexual abuse for grabbing the breasts of two teenagers); *People v. Allen*, 2017 IL App (1st) 151540 (reducing burglary sentence from 10 ½ years to Class X minimum of six years where defendant took a hat and two packs of cigarettes from a vehicle); *People v. Busse*, 2016 IL App (1st) 142941 (reducing 12-year sentence to Class X minimum of six years where defendant stole $44 in coins from a vending machine).

¶ 39    The cited cases do not persuade us to reduce the sentence for this particular defendant. We do not engage in comparative sentencing, as our supreme court has held that it "does not comport with our sentencing scheme's goal of individualized sentencing and would unduly interfere with the sentencing discretion vested in our trial courts." *People v. Fern*, 189 Ill. 2d 48, 55 (1999). Thus, "[t]he fact that a lesser sentence was imposed in another case has no bearing on whether the sentence in the case at hand is excessive *on the facts of that case.*" (Emphasis in original.) *Id.* at 56.

¶ 40    In any event, we do not find defendant's sentence was manifestly disproportionate. Moreover, the trial court's remarks reflect that, in imposing a sentence three and a half years above the minimum, it relied on defendant's significant criminal history which spanned over two decades, including several burglary convictions as well as a conviction for aggravated battery. It was certainly within the trial court's discretion to consider these factors and impose a sentence three years and six months above the statutorily required minimum. See *People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009) (defendant's "criminal history alone" may warrant a sentence "substantially above" the minimum).

¶ 41    We also note that the trial court's remarks reflect that it considered various mitigating factors before electing to impose a sentence that was at the lower end of the applicable Class X sentencing range. In sum, we cannot say that the sentence imposed was greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense. Accordingly, the sentence was not an abuse of discretion.

¶ 42    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 43    Affirmed.